C. V. Johnson, Appellant, v. Ottawa Cooperative Grain Company, Appellee.

Gen. No. 9,295.

524

WOOD, MCNEAL & GEHLBACH, of Moline, for appellant.

HIBBS & POOL and BUTTERS, BUTTERS & BERRY, both of Ottawa, for appellee.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

On March 10, 1936, an amended complaint was filed in the circuit court of La Salle county, to which a motion to strike was, by the court, sustained and the amended complaint was stricken. The plaintiff having elected to abide by its amended complaint, the suit was therefore dismissed at the costs of the plaintiff and the plaintiff has prosecuted this appeal.

The amended complaint is as follows: "C. V. Johnson, Trustee, Plaintiff, in his capacity as trustee under a trust agreement from Airforce Conveyor Sales, Inc., a corporation, duly organized under the laws of the

State of Illinois on November 3, 1931, and having its principal office at Moline, in Rock Island County, Illinois, dated the 26th day of May, A. D. 1932, and as mortgagee under a chattel mortgage from said corporation to the plaintiff, dated the first day of September, 1932, and recorded in the Recorder's office of Rock Island County, Illinois, on the 3rd day of September, A. D. 1932, as Document No. 32825, in Book 102 of Chattels, on page 201 thereof, says: 1. That heretofore, on or about the 26th day of May, 1932, Airforce Conveyor Sales, Inc., duly organized under the laws of the State of Illinois, on November 3, 1931, and having its principal office at Moline, in Rock Island County, Illinois, (hereinafter referred to as 'the corporation'), was indebted for money loaned and advanced to it or on its behalf, and to secure the payment of the same it executed and delivered its thirty trust notes, or writings obligatory, all dated the 26th day of May, 1932, all payable to order of Clark G. Anderson, Trustee, said notes being for the sum of Two Hundred Dollars ($200.00) each; all being payable on or before five years after date with interest at seven per cent per annum after said date, said interest being due and payable July 1, 1932 and on the first day of each month thereafter, in accordance with the terms of a certain trust agreement. 2. Said trust agreement was and is in words and figures following: 'TRUST AGREEMENT' This agreement made and entered into this 26th day of May, A. D. 1932, by and between Airforce Conveyor Sales, Inc., (a corporation organized and existing under and by virtue of the laws of the State of Illinois) of the City of Moline, State of Illinois, (hereinafter called the corporation) and Clark G. Anderson, of the City of Moline, State of Illinois, (hereinafter called the Trustee) Witnesseth: Whereas, the corporation owns a grain loading station located at #301 Joliet Street in the City of Ottawa, State of Illinois, which station

is now under lease, and Whereas, the corporation has borrowed Six Thousand (6,000) Dollars and issued its Trust Notes in the aggregate amount of Six Thousand (6,000) dollars as evidence of said loan, and has deposited said notes with the trustee, and Whereas, the proceeds of said loan are to be deposited with the trustee by the agent arranging said loan in exchange for the aforesaid trust notes and Whereas, the corporation desires to provide for the payment of interest and re-payment of principal of said notes by assignment of the lease on said station to the trustee, the entire rental under said lease to be collected by the trustee as it becomes due, and to be received by the trustee in trust, and disbursed by him as hereinafter provided, and Whereas, the trustee has accepted the trusts created by this instrument, Now, therefore, in consideration of the premises and of the mutual covenants herein contained, it is agreed as follows: 1. That the trustee shall pay over the proceeds of said loan to the corporation when and as said proceeds are deposited with him. 2. That the corporation shall assign the lease on said station and all rights thereunder to the trustee, and by such assignment shall give the trustee exclusive right to the possession of and income from said station for the purpose of this agreement. In the event of the termination of the assigned lease for any cause, the corporation shall make such new lease or leases as shall be for the best interests of the beneficiaries of this trust, and the parties hereto, and shall immediately assign said lease or leases to the trustee; provided that should the corporation fail to make and assign a lease to the trustee within sixty days from the termination of any lease, the trustee may make such new lease or leases as in his judgment shall be for the best interests of the parties hereto. 3. That the trustee shall collect the rental from such station direct from the lessee each month as said rental becomes due, and apply and disburse the money so collected as hereinafter provided;

4. That the trustee from the money collected as rent, shall first set aside each month a sufficient amount to pay the interest on the said notes and from such money so set aside shall pay the interest on the aforesaid notes when and as such interest becomes due. The balance of the rent, after deduction of interest, shall be divided each month into two equal parts, one of which parts shall be known as the liquidation fund.
5. That on or before the first anniversary of this agreement, and quarterly thereafter, the trustee shall apply the residue of the liquidation fund to the payment of the principal of the aforesaid notes, paying such notes as his funds shall permit him to pay in full.
6. That the corporation shall keep the station in good repair, and shall pay all taxes, ground rents and other charges incident to the ownership of the said station. In the event the corporation fails to make such necessary repairs or any such payment, then the trustee may make them and deduct the amount thereof from that part of the rent due the corporation. 7. That the trustee shall receive as compensation for services five (5) per cent of all money collected by him as rent of said station, and shall be reimbursed for all necessary expenses properly incurred in carrying out the provisions of this trust. Such compensation and expenses to be deducted from moneys coming into his hands as rent from said station. 8. That all moneys coming into the hands of the trustee, the payment of which is not specifically provided for herein, shall be paid monthly by the trustee to the corporation, except that the trustee may hold in his hands a reserve fund of one hundred dollars until the termination of this trust. 9. That in the event there is insufficient money in the liquidation fund on the fifth anniversary of this agreement to completely liquidate all outstanding notes issued hereunder together with interest, the trustee shall demand of the corporation sufficient funds to complete such liquidation, and upon failure of the corporation

to immediately supply such funds, he shall take such action against the corporation as may be necessary to collect such funds; and until the liquidation of said notes and interest together with all expenses and charges incident to the liquidation of this trust shall have been paid in full, he shall continue under this trust to collect the rental of said station, and shall apply the entire amount so collected to the liquidation of said notes, interest, expense and charges. 10. That immediately upon the completion of the liquidation of this trust, the trustee shall cause this instrument to be released, shall turn over to the corporation all notes issued under this agreement, duly cancelled, and shall pay over to the corporation all money remaining in his hands, shall reassign to the corporation any lease or leases held by him and make any other acquittances required in the premises. 11. That the trustee shall have full power to do any and all things necessary to carry out the trust, bring any suit or action which in his judgment shall be necessary to enforce the provisions of this agreement, and shall be entitled to be reimbursed for all necessary expenses properly incurred thereby. If in the judgment of the trustee any suit or action should be necessary at any time to protect the interest of the corporation or the note holders, and the trustee should have insufficient funds on hand to prosecute such suit or action, he shall immediately notify the party or parties whose interests are in jeopardy, and he shall be bound to bring such suit or action only after such funds necessary to reimburse him for the expense of said suit or action have been to him advanced. 12. That the trustee shall be responsible only for the exercise of good faith and reasonable care in the collection of moneys belonging to the trust, and in the exercise of his discretionary powers he shall be liable only in case of wilful bad faith or wilful wrongdoing. In Witness Whereof, the corporation has caused its signature and seal to be hereunto affixed by its duly

authorized officers and the trustee has hereunto set his hand and seal this date and year first above written. Airforce Conveyor Sales, Inc. By V. W. Carris President Attest: Chas. F. Myers Secretary Clark G. Anderson (Seal) Trustee (Airforce Conveyor Sales, Inc. Corporate Seal Illinois). 3. On July 23, 1932, said Clark G. Anderson resigned said trust and plaintiff was duly appointed trustee under said trust agreement and accepted said appointment and became successor in trust to said Clark G. Anderson, under said trust agreement. Said resignation and acceptance were and are in words and figures following: 'This Agreement made at Moline, Illinois, this 23rd day of July, A. D. 1932, by and between Clark G. Anderson, as trustee, and Airforce Conveyor Sales, Inc., a corporation; Witnesseth: Whereas, the parties hereto entered into a certain trust agreement, dated May 26th 1932, whereby said Clark G. Anderson became trustee of the income of the grain loading station located at #301 Joliet Street, in the City of Ottawa, State of Illinois; and Whereas, because of the removal of said Clark G. Anderson from the city of Moline, Illinois, to Denver, Colorado, it is necessary that said Clark G. Anderson resign as trustee under said trust agreement and a new trustee be appointed as successor in trust; and Whereas, it is agreeable to the parties hereto, that C. V. Johnson be appointed and constituted trustee under said trust agreement in the place and stead of said Clark G. Anderson, and said C. V. Johnson is ready and willing to accept the trust; Now, therefore, in consideration of the premises and of the mutual covenants herein contained, the resignation of said Clark G. Anderson as trustee under said trust agreement is hereby accepted, and he is hereby discharged from any and all duties, privileges, rights and liabilities as such trustee, provided that he render a just and true account of all his doings as such trustee; and that said C. V. Johnson be and he is hereby appointed and consti-

tuted trustee under said trust agreement, succeeding to all the rights and duties of said Clark G. Anderson, as the original trustee under said trust agreement. In Witness Whereof, the said corporation has caused its name and seal to be hereunto affixed by its duly authorized officers and the said Clark G. Anderson has hereunto set his hand and seal the day and year first hereinabove written. Airforce Conveyor Sales, Inc. By V. W. Carris, President Attest: Chas. F. Myers, Secretary Clark G. Anderson (Seal). I hereby accept the above appointment as trustee under said trust agreement and agree to carry out the provisions thereof. C. V. Johnson (Seal). 4. Fifteen of said trust notes were sold, transferred and delivered for valuable consideration by said Clark G. Anderson and the plaintiff, as trustee and successor in trust respectively; and thereafter from time to time said trust notes were resold, retransferred and redelivered for valuable consideration to divers and sundry persons, which persons thereupon became the bona fide holders thereof for value, and said fifteen trust notes are now owned and held by the following named persons and are in the principal amounts set opposite the names of such persons: J. W. Dunahugh 7 notes $1,400.00; Victor Johnson 1 note $200.00; C. V. Johnson 2 notes $400.00; Ralph Anderson 1 note $200.00; Oscar Ellis, Receiver of LeClaire Hotel 4 notes $800.00  5. To further secure payment of said Six Thousand Dollars ($6,000.00) mentioned in said trust agreement, on or about September 1, 1932, said corporation made and executed its certain promissory note, dated at Moline, Illinois, the first day of September, 1932, for the sum of $6,000.00, for value received, payable to plaintiff, as trustee under said trust agreement, on or before three years after said date, with interest at seven per cent per annum from and after said date until fully paid; that said note provided that the purpose of the note was to evidence

the obligation of the maker thereof for the payment of said sum of Six Thousand Dollars, as set forth in said trust agreement, and that the sum of Six Thousand Dollars set forth in said trust agreement and the principal sum mentioned in said note were one and the same indebtedness; that said promissory note was and is in words and figures following: 'Moline, Illinois, September 1, 1932. On or before three (3) years after date, for value received, the Airforce Conveyor Sales, Inc., hereby promises to pay to the order of C. V. Johnson, Trustee, under a certain trust agreement dated May 26, 1932, the sum of Six Thousand Dollars ($6,000.00), at its principal office in the City of Moline, Illinois, together with interest at 7% per annum from and after date hereof until fully paid. This note is secured by a chattel mortgage to C. V. Johnson, Trustee, of even date herewith, on personal property located at Ottawa, Illinois. The purpose of this note is further to evidence the obligation of the maker hereof for the payment of said sum of $6,000.00 as set forth in said trust agreement; the said sum of $6,000.00 so set forth in said trust agreement and the like sum hereinabove mentioned being one and the same indebtedness, and the satisfaction of the one will be and constitute satisfaction of the other. Airforce Conveyor Sales, Inc. By V. W. Carris President Attest: Chas. F. Myers, Secretary.' 6. On the date of said note, said corporation was the owner of the goods and chattels described in the chattel mortgage hereinafter set forth, and to secure payment of said note, said corporation, on the same date, duly made, executed, acknowledged and delivered in conformity with the laws of the State of Illinois in reference to chattel mortgages, its chattel mortgage, and on September 3, 1933, said mortgage was filed for record in the office of the Recorder of Deeds of Rock Island County, Illinois, and recorded in Book 102 of Chattels, on page 201 thereof; said chattel

mortgage and acknowledgment and certificate of filing were and are in words and figures following: 'Filed and recorded Sept. 3–1932, at 11:50 o'clock A. M. 32825 Sam Ryerson, Recorder of Deeds Book 102 Page 201 THIS INDENTURE, Made this 1st day of September, in the year of Our Lord One Thousand Nine Hundred and Thirty-two, between Airforce Conveyor Sales, Inc., an Illinois corporation, having its principal office in the City of Moline, Rock Island County, Illinois, party of the first part and C. V. Johnson, Trustee, party of the second part. WITNESSETH that the said party of the first part, for and in consideration of the sum of Six Thousand and no/100 Dollars, in hand paid, the receipt of which is hereby acknowledged, does hereby grant, sell, convey and confirm unto the said party of the second part, his successors and assigns, all and singular the following described goods and chattels, to-wit: The complete grain loading station located at No. 301 Joliet Street, Ottawa, Illinois, including one complete blower, 1000 bushel capacity; One complete set wagon and truck scales; One complete platform and drive; One scale house and office; Two electric motors; One air hoist with pump, tank, valves, regulators, and other equipment; Four steel bins of approximately 1000 bushel capacity each; and auger conveyors, piping, elbows, Y-spouts; and all other attachments, appurtenances, and equipment of every kind as now located at said address; Together with all and singular the appurtenances thereunto belonging, or in any wise appertaining. To have and to hold the same unto the said party of the second part, his successors and assigns, to his and their sole use forever. And the said party of the first part, for its successors and assigns, does covenant and agree with the said party of the second part, his successors and assigns, that it is lawfully possessed of the said goods and chattels, as of its own property; that the same are free from all incum-

brances, and that it will, and its successors and assigns shall, warrant and defend the same unto the said party of the second part, his successors and assigns, against the lawful claims and demands of all persons. Provided, nevertheless, that if the said Airforce Conveyor Sales, Inc., party of the first part, its successors or assigns, shall well and truly pay, or cause to be paid unto the said party of the second part, his successors or assigns, the sum of Six Thousand Dollars, on or before three (3) years after date hereof, at its principal office in said City of Moline, together with interest at 7% per annum from and after date hereof until fully paid, according to the tenor and effect of its one certain promissory note of this date, then and from thenceforth these presents and everything herein contained shall cease and be null and void. And provided, also, that it shall be lawful for the said party of the first part, its successors or assigns, to retain possession of the said granted property, and at its own expense to keep and to use and enjoy the same, until the party of the first part, or its successors or assigns, shall make default in the payment of said sum of money above specified, either in principal or interest, at the time or times, and in the manner hereinbefore contained, or unless said party of the second part shall fear diminution, removal or waste, for want of proper care, or if the said party of the first part shall sell or assign, or attempt to sell or assign, the said goods and chattels, or any part thereof, or if any writ issued from any Court, shall be levied on any part of the above described goods and chattels, that then and in any of the aforesaid cases, all of said note, both principal and interest, shall become due and payable, and said party of second part, his successors and assigns, agents or attorneys, or any part of them may elect thereupon to take possession of said property and for that purpose may pursue the same, or any part thereof, wherever it

may be found, and also may enter any of the premises of the said party of the first part, with or without force or process of law, wherever the said goods and chattels may be, or be supposed to be, and search for the same, and if found, to take possession of and remove, and sell and dispose of said property or any part thereof at public auction, to the highest bidder, after giving ten days' notice of the time, place and terms of sale, together with a description of the property to be sold, either by publication in some newspaper in the County of Rock Island, Illinois, or by similar notices posted up in three public places in the vicinity of such sale, or at a private sale, with or without notice for cash or credit, as the said party of the second part, successors or assigns, agents or attorneys, or any of them may elect, and out of the money arising from such sale to retain first, all costs and charges for pursuing, searching, taking, removing, keeping, storing, advertising and selling of such property, goods, chattels, and effects and all prior liens, together with the amount due and unpaid upon said note, or any of them, either in principal or interest, rendering the overplus of money arising from such sale (if any there be) unto the party of the first part or its legal representatives. In Witness Whereof said corporation has caused its name and seal to hereunto affixed by its duly authorized officers, the day and year first hereinabove written. Airforce Conveyor Sales, Inc. By V. W. Carris President Attest: Chas. F. Myers Secretary (Airforce Conveyor Sales, Inc. Corporate Seal Illinois). State of Illinois County of Rock Island SS, I, Ruby S. Miller, a Justice of the Peace in and for said county, do hereby certify that this Chattel Mortgage was duly acknowledged before me by Airforce Conveyor Sales, Inc., a corporation, by V. W. Carris, President, the Mortgagor, this 3rd day of September, A. D. 1932, and the contents thereof entered on page 826 of my docket. Witness my hand

and seal. Ruby S. Miller (Seal) Justice of the Peace.' 'State of Illinois Rock Island County SS 32825 I, Sam Ryerson, Recorder of Deeds in and for said County, do hereby certify that this Chattel Mortgage was filed for record in my office on the 3 day of Sept. A. D. 1932, at 11:50 o'clock A. M., and duly recorded in Book 102 of Chattels, on page 201. In Witness Whereof, I have hereunto set my hand, at my office in Rock Island, the day and year above written. Sam Ryerson Recorder of Deeds' 7. In connection with the execution and acknowledgment of said chattel mortgage, plaintiff says that at the time of the execution and acknowledgment thereof, Section 4 of Article 5 of the by-laws of said corporation provided in part as follows: 'The president . . . shall execute all deeds, leases, conveyances, agreements and contracts authorized by the board of directors. . . .' And Section 5 of said article of the by-laws of the corporation then provided that: 'the secretary shall attest or countersign all deeds, leases, conveyances, agreements and contracts executed by the corporation and affix the corporate seal thereto. . . .' 8. On September 1, 1935, said note became due and payable and said corporation defaulted in the payment of said note or any part thereof to the plaintiff; on September 4, 1935, plaintiff declared that default had been made in the payment of said note and thereupon plaintiff became and was entitled to the immediate possession of said goods and chattels, and appointed the sheriff of LaSalle County, Illinois, as his agent for the purpose of selling said goods and chattels and delivering possession of the same to the purchaser at such sale, in accordance with the powers contained in said mortgage; said agent caused notices to be posted in the manner required by law and the provisions of said mortgage, of his intention to offer said goods and chattels for sale at public auction on September 17, 1935, at 10:00 o'clock in the forenoon, at

No. 301 Joliet Street, Ottawa, Illinois; on the last-mentioned date, Ottawa Cooperative Grain Company, a corporation (hereinafter referred to as the defendant), appeared at the Sheriff's office in the Court House at Ottawa, Illinois, by its president and attorney, and claimed to be in possession of said goods and chattels by virtue of alleged rights, the precise nature of which being unknown to plaintiff; such rights, if any, in said goods and chattels are subsequent to and subject to plaintiff's lien therein under and by virtue of said mortgage. 9. On September 17, 1935, plaintiff demanded possession of said goods and chattels from defendant and defendant then refused to permit plaintiff or his agent to take possession of said goods and chattels, for the purpose of selling said goods and chattels under the powers contained in said mortgage, and wrongfully and unjustly detained possession of said goods and chattels from plaintiff. THEREFORE plaintiff prays for the judgment of this Court finding that said goods and chattels were wrongfully detained by the defendant and that the plaintiff is and at the time of said demand was entitled to possession of said goods and chattels; and prays for judgment for damages for the detention of said goods and chattels while the same have been wrongfully detained by the defendant, and in the event said goods and chattels, or any part thereof are not found, for the value thereof, or his interest therein, and for such damages as plaintiff shall have sustained by reason of the wrongful detention, and for costs in this behalf most wrongfully sustained.''

It is first insisted by counsel for appellee that this amended complaint fails to allege that appellant, as trustee, was authorized, by the trust agreement, to bring this suit and likewise fails to show that he had authority to take the chattel mortgage mentioned and described in said amended complaint. An examination of the provisions of the trust agreement which is set

forth in the amended complaint discloses that one of
its objects and purposes was to provide a means of
securing the payment of the notes which were given to
evidence the indebtedness of the Airforce Conveyor
Sales, Inc., to the various noteholders. The trustee
therefore had, if not an express power, certainly an
implied power to accept the chattel mortgage as addi-
tional security for the payment of that indebtedness.
Furthermore, the trust agreement expressly provided
that the trustee should have full power to do any and
all things necessary to carry out the trust and full
power to bring any suit or action which in his judg-
ment should be necessary to enforce the provisions of
the trust agreement. An action at law must always
be brought by the party who has a legal interest in the
property or subject matter involved in the proceed-
ing. In this proceeding it was necessary therefore for
appellant to state facts showing that he was entitled
to the possession of the property described in the com-
plaint and in our opinion the act of the trustee in tak-
ing the note and chattel mortgage was consistent with
and not in contravention of the powers given him under
the trust agreement.

Counsel for appellee, insist, however, that the trust
agreement was made for the purpose of assigning the
lease on the grain loading station to the trustee and
giving the trustee exclusive right to the possession of,
and to the income from, the station and counsel argue
that the giving of the chattel mortgage is in direct con-
flict with this purpose because the chattel mortgage
provides that the corporation may retain possession of
the grain loading station. By this argument counsel
concede that the trust agreement gave the trustee the
right to the possession of the property involved herein
and if he is the party entitled to possession thereof, he
is the proper party to bring this suit. The true pur-
pose of the trust agreement as disclosed by all its pro-

visions was to provide a means of securing the payment of the several notes given by the corporation to the various holders of those notes and in our opinion gave him full power and authority to bring about the result by instituting this proceeding.

It is next insisted by counsel for appellee that it appears from the allegations of the amended complaint that there was no consideration for the execution and delivery of the note for $6,000, and the chattel mortgage given to secure its payment. In support of this contention, counsel argue that the amended complaint discloses that the Airforce Conveyor Sales, Inc. executed 30 notes on May 26, 1932, payable 5 years after date and that the maker thereof was, therefore, obligated to pay the indebtedness evidenced by these notes on May 26, 1937; that in a little more than 3 months after the execution of these notes and on September 1, 1932 the maker of these notes executed the $6,000 note due September 1, 1935, and secured the payment thereof by the chattel mortgage described in the amended complaint; that the amended complaint does not disclose any new consideration passing to the maker of the $6,000 note and therefore by this promise the maker assumed an additional obligation to pay almost 2 years before he was obligated to pay as provided by the notes of May 26, 1932, which did not mature until May 26, 1937.

Counsel concede that a pre-existing debt furnishes a sufficient and good consideration for a note but contends that where a debtor is obligated to pay the debt on a certain date, that a subsequent promise by it to pay the same indebtedness almost 2 years before the former debt would have become due must be supported by a new consideration in order to make it valid. In support of this contention, counsel cite *Jennings v. Neville,* 180 Ill. 270, where it is stated on page 279 of the opinion that "an agreement that a smaller sum shall be received in discharge of an indebtedness in a

larger amount is without consideration and can not be enforced as against the holder of the debt.'' This, of course, is a correct statement of the law but has no application here. The consideration for a chattel mortgage is the debt however evidenced. The allegations in the amended complaint as to the 30 notes executed in May, 1932, by the Airforce Conveyor Sales, Inc. simply shows the relationship which existed between the maker of those notes and the trustee for the noteholders. This is an action of .replevin. The amended complaint sets forth the note and chattel mortgage in *haec verba*. The note recites upon its face that it was executed by the maker for value received and the chattel mortgage aptly describes the note and the amended complaint alleges that the Airforce Conveyor Sales, Inc. made and executed its note for value received and all these allegations were admitted by appellee's motion to strike.

It is finally insisted by counsel for appellee that the chattel mortgage is void because not acknowledged as required by law. The certificate of acknowledgment is as follows:

"State of Illinois } ss.
County of Rock Island }

"I, Ruby S. Miller, a Justice of the Peace in and for said county, do hereby certify that this chattel mortgage was duly acknowledged before me by Airforce Conveyor Sales, Inc., a corporation, by V. W. Carris, President, the mortgagor, this 3rd day of September A. D. 1932, and the contents thereof entered on page 826 of my docket.

"Witness my hand and seal.
                    "Ruby S. Miller (Seal)
                    Justice of the Peace.''

Counsel's argument is that this acknowledgment is in the form prescribed by the statute where the mortgagor is a person but that in the instant case the mort-

gagor is a corporation and that the corporation could not appear in person and therefore the acknowledgment should have been made by the officer of the corporation who appeared before the justice of the peace for and on behalf of the corporation. In support of this contention, counsel cite 1. R. C. L. 288, sec. 69. This section is as follows: ''In the case of an acknowledgment made by an agent, attorney, officer of a corporation, or member of a partnership, the certificate by appropriate recitals must identify the principal and disclose the representative character in which the agent, officer, or member acts. But it is not necessary as a rule to have the certificate recite in express terms that the representative is authorized to acknowledge the instruments in behalf of the principal. The statutes not infrequently prescribe the form of the certificate and the recitals to be embodied therein in case of acknowledgments made in a representative capacity, and where such acts exist a substantial compliance with their provisions is exacted. With respect to instruments executed by corporations the certificate should recite that the person making acknowledgment is to the officer's knowledge the representative of the corporation that he claims to be. And it should be recited that the corporate representative acknowledges the execution of the instrument as the act and deed of the corporation.''

In 10 Am. Jur. 765, sec. 77, it is stated: ''A literal and exact compliance with the statutory requirement as to knowledgments is not essential; a substantial compliance is sufficient. Such acknowledgments are liberally construed and are upheld whenever it can be done by a fair and reasonable interpretation of the statute. The identity of the mortgagor and his acknowledgment are the essential facts required to be shown and if the acknowledgment does this, it complies with the statute. An acknowledgment is insufficient which fails to conform substantially to a statutory form. Likewise an

acknowledgment of a mortgage given by a corporation which fails to state that the officer executing the instrument signed and sealed it in behalf of the corporation is insufficient.''

In support of this statement, the text cites *Clarksburg Casket Co. v. Valley Undertaking Co.*, 81 W. Va. 212, 94 S. E. 549, 3 A. L. R. 660. It appeared in that case that the instrument assailed was a deed of trust covering hearses and undertaker supplies. The defect in the certificate of acknowledgment was the omission from the affidavit which constituted a part of it, of the clause, ''and that said writing was signed and sealed by him in behalf of said corporation.'' The court held that this clause was a part of the form prescribed by the West Virginia Code and concluded: ''Though literal compliance with the form of acknowledgment prescribed for corporations is not essential, there must be substantial compliance with it. The statute itself says a certificate may be in form or effect as therein prescribed. The clause omitted is obviously a substantial one and lack thereof is not supplied by any equivalent words. The executing officer is required to swear 'that said writing was signed and sealed by him in behalf of said corporation.' It is not enough that he has authority generally to execute deeds and other instruments for and on behalf of the corporation. He must swear that he had authority to execute the particular instrument he acknowledges. He is not the corporation, nor has he power to do all the things it might do. Whether the corporation itself authorized the execution of the particular instrument is a vital matter, and he is required to swear that it did. Though the deed says he executed it by authority of the corporation duly given, that statement is not in the affidavit, nor was it made on oath as the statute requires it to be. The omission of this clause manifestly vitiates the certificate.''

Our statute contains no separate provision relative to certificates of acknowledgment to chattel mortgages executed by corporations. In 1 Am. Jur. 343, 344 it is said: "Where the statute provides no form of acknowledgment—as, for instance, to articles adopting a child—the form prescribed for conveyances may be used. Similarly, acknowledgments of corporations may pursue the form in use for natural persons, such changes being made as naturally suggest themselves." In support of this statement *Hooper v. Lovejoy*, 47 N. J. Eq. 573, 21 Atl. 298, 12 L. R. A. 589 is cited. In that case the court stated that New Jersey did not have, as in some States, a statute relating to the acknowledgment of corporate deeds particularly but that under the act respecting conveyances, the deeds of corporations can be lawfully recorded and can therefore be lawfully acknowledged. "With regard to corporate deeds," says the opinion, "he (the officer taking the acknowledgment) must therefore be satisfied that such person is, in the eye of the law, the grantor mentioned in it: that is, authorized to represent the corporation in executing and acknowledging the conveyance. Being so satisfied, he accepts the acknowledgment of the representative as that of the grantor itself. This accords with the view expressed in other states upon like enactments. Thus in *Merrill v. Montgomery*, 25 Mich. 73, the court said as to corporate deeds: 'The acknowledgment is to be made by the person representing the corporation in that act.' And in *Lovett v. Steam Sawmill Asso.*, 6 Paige 54, 3 L. Ed. 896, Chancellor Walworth, speaking of the New York Registry Act, which required deeds to be acknowledged by the party executing the same, said: 'The officer or agent of the corporation, who executed a deed in the name of the corporation, by affixing thereto the impression of the common or corporate seal intrusted to his care, is the party executing the deed, as it is impossible that a corpora-

tion aggregate should execute or acknowledge a deed in person.' "

In *First National Bank v. Baker*, 62 Ill. App. 154, the court had under consideration the following certificate of acknowledgment of a chattel mortgage signed by the Corey Car and Manufacturing Company. "State of Illinois, County of Cook. ss. I, Jarvis Blume, a Justice of the Peace in the town of West Chicago, in and for said county, do hereby certify that this mortgage was duly acknowledged before me by the above named Jarvis B. Rielly, Sect'y, and Francis W. Corey, Pres't, the mortgagors therein named, and entered by me this 6th day of February, A. D. 1894. Witness my hand and seal. James Blume, (Seal) Justice of the Peace, Town of West Chicago, County of Cook, State of Illinois." In holding this certificate of acknowledgment defective the court said that it was the grantor only which could acknowledge a chattel mortgage and that the certificate of acknowledgment must set forth that the grantor did acknowledge it; that the officer before whom this acknowledgment was taken did not take the responsibility of certifying that the grantor acknowledged or that Rielly and Corey were the secretary and president respectively of the Corey Car and Manufacturing Company or as officers of that company that they acknowledged to him anything whatever; that the certificate is that the mortgage was acknowledged by Rielly, secretary, and Corey, president, the mortgagors therein named, but as a matter of fact Rielly and Corey were not the mortgagors therein named. This case was affirmed by the Supreme Court in *First Nat'l Bank v. Baker*, 161 Ill. 281, but the court did not pass upon the question of the sufficiency or insufficiency of the certificate of acknowledgment.

The general statute of this State in force at the time this chattel mortgage was executed provided among other things that a chattel mortgage to be valid as

against the rights and interests of any third party should be acknowledged and that the certificate of acknowledgment should be substantially in the form as set forth in the statute. Counsel for appellee concede that the certificate is in the form provided by the statute and by this certificate the acknowledging officer certified that this chattel mortgage was duly acknowledged before him by the mortgagor, a corporation, by its president V. W. Carris. The instrument itself to which this acknowledgment was a part disclosed that the mortgagor was an Illinois corporation, having its principal office in Moline, Illinois, that said corporation caused its name and corporate seal to be affixed thereto by its duly authorized officers, that the name of the corporation was subscribed thereto by V. W. Carris, president, and the signature attested by Chas. F. Myers, its secretary, and the corporate seal of the mortgagor appeared attached thereto. Under the authorities the certificate of acknowledgment may be supported by referring to the instrument to which it relates. 1 R. C. L. 282; 1 Am. Jur. 347. In our opinion when this certificate of acknowledgment is read in connection with the recitals in the body of the instrument and with the attestation clause and the signatures of those who signed the instrument, it must be held that this instrument was duly acknowledged by the mortgagor and the certificate of acknowledgment held to be a sufficient certificate thereof. Furthermore, the amended complaint here alleges that the by-laws of the mortgagor provided that its president execute all instruments and that the secretary attest the same and affix the corporate seal thereto and the law is, as a general proposition, that the officer of a corporation authorized to execute an instrument may acknowledge it. Here then the certifying officer, from the instrument itself must have satisfied himself that V. W. Carris was authorized to represent the mortgagor in

executing and acknowledging the instrument and being so satisfied, he accepted the acknowledgment of the president, V. W. Carris as the acknowledgment of the mortgagor itself. *Hooper v. Lovejoy, supra.* While this certificate does not in express terms recite that the president was authorized to acknowledge the instrument in behalf of the mortgagor, yet in *Sawyer v. Cox,* 63 Ill. 130, one of the deeds which was offered in evidence was a conveyance from the Illinois Central Railroad Company and the acknowledgment was made by "The Illinois Central Railroad Company, by John Newell its Vice President." In holding such acknowledgment sufficient the court said: "We see no objection to the Vice President appearing for the company and acknowledging the deed. Appellant's counsel has not suggested nor can we perceive how the company could have otherwise acknowledged the deed." Very full annotations upon the sufficiency of the certificate of acknowledgment and the identification and description of the person making the acknowledgment when an instrument is executed by a corporation will be found in 29 A. L. R. 989 and 72 A. L. R. 1299.

In our opinion the trial court erred in sustaining appellee's motion to dismiss. The judgment of the lower court will therefore be reversed and the cause remanded with directions to overrule this motion and rule appellee to answer the amended complaint.

*Reversed and remanded with directions.*