DAVIE KRAVITZ *et al.*, d/b/a Brittany Square Development Company, Plaintiffs-Appellants, *v.* THE COUNTY OF LAKE, Defendant-Appellee.

Second District   No. 77-9

Opinion filed July 20, 1978.

William T. Kirby and David M. Allen, both of Hubachek, Kelly, Rauch & Kirby, of Chicago, for appellants.

Dennis P. Ryan, State's Attorney, of Waukegan (Gary Neddenriep, Assistant State's Attorney, of counsel), for appellee.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The plaintiffs-appellants, Davie Kravitz and Ronald Freese, doing business as Brittany Square Development Company, hereafter the plaintiffs, sued the county of Lake, defendant-appellee, hereafter the county, to enforce a provision of a contract by which the county acquired a water system serving several subdivisions. After hearing the evidence, Judge Fred H. Geiger granted the county's previously denied motion for summary judgment. The plaintiffs have appealed. On appeal they raise four issues as possible grounds for reversing the judgment of the trial court. First, the plaintiffs assert the trial court erred in dismissing their complaint on the ground that the relevant county board resolutions were

silent as to the provisions relied upon by the plaintiffs. Secondly, they contend the evidence shows the county board ratified the relevant contract provisions. Third, the plaintiffs contend the trial court erred by not invoking the doctrine of equitable estoppel against the county, and, lastly, the plaintiffs assert the trial judge made procedural errors that mandate a reversal. In its brief, the county has raised an additional issue challenging the standing of the plaintiffs to bring the action.

After reviewing the record and weighing the arguments presented, we are of the opinion that the judgment of the circuit court of Lake County must be reversed and the cause remanded for a new trial.

The source of this controversy is the county's 1967 purchase of the Lake County Water Corporation, hereafter the water works. The water works, which serves several Lake County subdivisions including Arbor Vista, Fox Lake Hills, and Wildwood, had one principal stockholder, Mr. John T. Rule, who was also the president of the company and a developer of the various subdivisions. The county, desiring to enter into the water business, went to the Illinois Commerce Commission to obtain permission to acquire the water works by eminent domain (see section 2 of "An Act to provide for the exercise of the right of eminent domain" (Ill. Rev. Stat. 1977, ch. 47, par. 2)). After receiving the requisite permission, the county entered into negotiations with Mr. Rule for the sale of the water works. During these negotiations, the county's principal representative was Mr. H. W. Byers, the then superintendent of the Lake County Public Works Department. Having reached an apparent agreement, the county drafted a contract giving it the option to purchase the water works for $950,000 and sent it to Mr. Rule for his approval. Upon receiving the contract, Mr. Rule telephoned Mr. Byers to protest the fact that the contract did not prohibit the charging of a connection fee in the areas served by the water works—a prohibition to which Mr. Rule thought the parties had agreed. As time was running short, Mr. Byers suggested that the defect could be cured by a letter to be delivered when Mr. Rule signed the contract. The suggestion was acceptable to Mr. Rule, who appeared in Mr. Byers' office on September 8, 1967, to sign the contract. At that time the following letter, hereafter referred to as the Byers' letter, was delivered to him as he affixed his signature on the contract:

"Dear Mr. Rule:

This letter is written as an inducement to conclude the negotiations for sale of the Lake County Water Corporation.

The department understands that certain owners of lots in Wildwood hold agreements (called franchises) which contain a clause stating that the landowners will be able to purchase water for twenty (20) years from the date of agreement 'at rates

approved by the Illinois Commerce Commission'. The Department and the County warrant that if the holders of these agreements threaten suit they will sell water to the holders of these agreements at a cost not to exceed the latest rates allowed by the Illinois Commerce Commission to the Company.

Further, we warrant that there will be no connection fee charged in the territory presently being served water.

Very truly yours,
s/s H. W. Byers
H. W. Byers, Superintendent
Lake County Public Works Department."

The contract Mr. Rule signed was debated before the Lake County Board of Supervisors on October 10, 1967. During that meeting, the county board accepted a report from a consulting engineering firm on the feasibility of the county acquiring the water works. That report showed the subdivisions of Fox Lake Hills, Wildwood, and Arbor Vista to have a total of 1,075 vacant lots which the report assumed would be developed by 1982. The report gives income projections for 1968-92, however, it makes no mention of any income to be derived from the charging of collection fees. At trial, two members of the county board testified concerning the events of the supervisors' meeting, which, unfortunately, were not transcribed. Mr. Ronald Coles, who represented a portion of Fox Lake Hills, one of the affected subdivisions, testified to the effect that the full county board was informed of the Byers' letter and the question of no connection fees before it approved the contract. Mr. Norman Geary was called by the county and testified that the question of charging connection fees in the area had not been discussed by the board. However, on cross-examination, after being shown a newspaper account of the meeting to refresh his recollection, Mr. Geary stated he could not recall whether or not connection fees had been discussed.

The county took no action inconsistent with the provisions of the Byers' letter until July 14, 1970, when it adopted an ordinance calling for the charging of connection fees in several subdivisions including Arbor Vista, Fox Lake Hills, and Wildwood.

In 1972, plaintiffs entered the picture by purchasing several lots in Fox Lake Hills from Mr. Rule, who was one of the developers of that subdivision. Mr. Rule testified that he informed the plaintiffs that no connection fee would be charged when they established water service. He further stated that the price of the lots reflected the fact that no connection fee would be charged. The plaintiffs developed two of the lots they had purchased from Mr. Rule and sought to establish water service. However, the county refused to establish water service until the plaintiffs

paid $500 in connection fees. The plaintiffs paid the fees under protest and sued to recover the $500 and to enjoin the county from charging such fees in the future.

The parties filed cross-motions for summary judgment. They submitted briefs and argued the merits of the motions before Judge Lloyd A. Van Deusen, who denied both summary judgment motions. Subsequently, the county filed a motion for judgment on the pleadings which was denied by Judge John L. Hughes. A bench trial was held before Judge Fred H. Geiger. After hearing all the evidence, Judge Geiger entered an order granting the county's previously denied motion for summary judgment. The county has confessed error on this procedural point. The instant appeal ensued.

First, we consider the county's contention that the plaintiffs lacked the necessary standing to bring this action. A party must have a legal interest in the subject matter involved to bring an action. (*Johnson v. Ottawa Cooperative Grain Co.* (1938), 294 Ill. App. 523, 14 N.E.2d 289.) The subject matter involved in the case at hand is the terms of the contract by which the county acquired the water works. While the plaintiffs were not parties to that contract, they assert they have standing as third-party beneficiaries. We agree.

■■ A person has standing as a third-party beneficiary to a contract if he is directly benefited by the contract. (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498, 81 A.L.R. 1262.) The question of whether or not a party derives a direct benefit from a contract so as to have standing as a third-party beneficiary must be determined on a case-by-case basis. (*Vinylast Corp. v. Gordon* (1973), 10 Ill. App. 3d 1043, 295 N.E.2d 523.) In making such a determination, a court may look to the facts of the case. (*Cody Trust Co. v. Hotel Clayton Co.* (1937), 293 Ill. App. 1, 12 N.E.2d 32.) We find the facts in the case at hand are analogous to the facts of *Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12. Nemerovski was an insurance broker who told a client, Mr. Johnson, that he was insured after Johnson made a downpayment on an automobile insurance policy. Relying on Nemerovski's assurance that he was covered, Johnson began driving. However, Johnson was, in fact, not covered because Nemerovski had failed to forward Johnson's insurance application to the relevant insurance company until a month later. During that month, Johnson was involved in an accident with Gothberg. The First District held Gothberg had standing to sue Nemerovski on the grounds that Johnson purchased the insurance, in part, for the benefit of those people with whom he might have an accident, thus giving Gothberg a direct benefit from Nemerovski's promise to procure insurance for Johnson.

■■ In the case at hand, the county purchased the water works from Mr.

Rule who also was one of the developers of Arbor Vista, Wildwood and Fox Lake Hills. Furthermore, Mr. Rule testified he told those to whom he sold lots that there would be no connection fee charged to establish water service, having included that in the price of the lot. Clearly, Mr. Rule and the purchasers of the lots in the subdivisions would derive a direct benefit from the county's promise not to charge a connection fee. The plaintiffs were such purchasers and therefore had the requisite standing to sue.

■■ Next, we turn to the question of whether or not the trial court properly granted the county's motion for summary judgment. Motions for summary judgment should only be granted when there are no material issues of fact. (*Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112.) Our review of the record reveals numerous questions of fact not disposed of by the trial court's decision. In operating a water system, the county was acting in its proprietary capacity as opposed to its governmental capacity. (*Hall v. County of Cook* (1935), 359 Ill. 528, 195 N.E. 54.) As such, principles of ratification and collateral estoppel were applicable to it. (*Holmes v. City of Chicago* (1917), 203 Ill. App. 445; *Great Lakes Dredge & Dock Co. v. City of Chicago* (1933), 353 Ill. 614, 188 N.E. 196.) The record reveals that plaintiffs raised the question of whether or not the county either ratified the Byers' letter or should be estopped from denying its validity. However, the trial court, apparently believing the county to be acting only in its governmental capacity, ignored the evidence in rendering its decision. We find that the plaintiffs raised material questions of fact concerning these issues, and accordingly, remand the cause to the circuit court of Lake County for a new trial before another judge.

Having concluded that the cause must be remanded for a new trial, we need not reach the remaining issues raised by plaintiffs.

For the above stated reasons, we reverse the judgment of the circuit court of Lake County and remand this cause for a new trial before a judge unfamiliar with the evidence as adduced at trial.

Reversed and remanded with directions.

SEIDENFELD, P. J., and NASH, J., concur.