542 F.Supp. 323 (1982)
SECURITIES FUND SERVICES, INC., Plaintiff,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Defendant.
No. 81 C 522.
United States District Court, N. D. Illinois, E. D.
May 27, 1982.
*324 Duane C. Quaini, William T. Barker, David C. Jacobson & Peter J. Valeta, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., Marshall, Bratter, Greene, Allison & Tucker, New York City, for plaintiff.
Narcisse A. Brown, Robert Dunn Glick, Richard M. Bendix, Jr., Schwartz, Cooper, Kolb & Gaynor, Chartered, Chicago, Ill., for defendant.

MEMORANDUM
LEIGHTON, District Judge.

I
This is a civil diversity action for damages arising out of a wire transfer transaction. New England Merchants National Bank of Boston (NEMB), at the direction of plaintiff Security Fund Services (SFS), requested, by wire, a transfer of funds disbursed by SFS to an account purportedly in the American National Bank and Trust *325 Company of Chicago (ANB), the defendant. The dispute arises from questions now being raised concerning crediting of the funds by ANB.
The complaint is in nine counts. Count I alleges that defendant engaged in reckless, willful and wanton misconduct constituting gross negligence. Count II alleges a failure to act in accordance with reasonable commercial standards. Count III alleges that defendant acted negligently and failed to exercise ordinary care. These three counts (I-III) will be collectively referred to as the negligence claims. Count IV alleges a breach by the defendant of its duties as an agent of NEMB and SFS. Count VIII alleges a breach of defendant's obligation as agent to act in strict accordance with its instructions. Counts IV and VIII will be referred to as the agency claims. Count V alleges defendant breached its duties as a bailee. Count VI alleges that the plaintiff is a third-party beneficiary to the contract that the defendant breached in failing to properly deliver the funds as directed by NEMB. Count IX alleges that defendant is estopped to deny the existence of a deposit contract and that it breached its duties under that contract. The cause is before the court on defendant's motion to dismiss all nine counts. For the following reasons, Counts I-IV and VII-VIII are allowed to stand, while Counts V, VI and IX are dismissed.
In deciding a motion to dismiss, the court accepts the well-pleaded allegations of fact as true, and reads them in the light most favorable to the plaintiff. Lundell v. Massey-Fergusen Services, 277 F.Supp. 940, 941 (N.D.Iowa 1967); Murphy v. Wheaton, 381 F.Supp. 1252, 1258 (N.D.Ill.1974); Jung v. K & D Mining Co., 260 F.2d 607, 608 (7th Cir. 1958). Accordingly, the following are accepted facts.

II
SFS is the Shareholder Service Agent for Templeton Growth Fund Ltd. (Templeton). SFS processes and records the purchases and redemptions of Templeton shares. In October, 1980, one of Templeton's shareholders was Mr. John Bushman, acting as a trustee for approximately 260,000 shares valued at more than $2 million. On or about October 14, 1980, SFS received instructions, bearing Bushman's signature, requesting that his shares be redeemed and the proceeds be wired to his account at ANB. The account number was said to be 204471. SFS processed the redemption, and directed NEMB, custodian of Templeton's funds, to make the requested wire transfer. NEMB did so and directed the amount of the redemption, the sum of $2,017,867.50, credited to the account of "John Bushman, Trustee // 204471." The transferred funds and accompanying written instructions were received by ANB on or about October 15, 1980. However, the true facts were that ANB had no account in the name of John Bushman, either individually or as trustee. Account 204471 was registered to Gerald S. Haberkorn, Inc. Notwithstanding this discrepancy, ANB credited the funds to Haberkorn's account without addressing any inquiry to either NEMB, SFS, or Templeton. On or about November 4, 1980, SFS learned that the redemption instructions had been forged and that the real John Bushman had no knowledge of the redemption and had no account or relationship with ANB. And, on inquiry, SFS learned from ANB that the funds were credited to Haberkorn's account. Haberkorn had previously agreed to sell approximately $2 million worth of diamonds and jewels to two individuals who promised to pay by wiring the funds into Haberkorn's account at ANB.
After the transfer of funds, Haberkorn delivered the merchandise to the two individuals. Neither the funds transferred into Haberkorn's account nor the jewels purchased with those funds have been recovered. SFS, upon discovery of the forgery, reissued the redeemed shares to the real John Bushman, Trustee, pursuant to an agreement between it and Templeton. The shares were paid for in cash by SFS. In having made whole Templeton and John Bushman, Trustee, SFS brings this suit, contending that it has succeeded to their *326 interests in all claims and rights arising out of these events. In Counts IV and VIII of the complaint, it alleges that ANB, by accepting the transfer of the funds from NEMB with instructions to credit the account of John Bushman, Trustee, became an agent for NEMB, the company which was its agent. Further, SFS claims that ANB's subsequent actions constituted a breach of its duty to act in strict accordance with the instructions it had received, and to inform its principal of all material facts concerning the transaction. Thus, SFS contends that ANB acted as its agent in this transaction.

III
An agency relation may be implied from the facts of the particular case and need not be express. "The existence of an agency relationship and its nature and extent may be shown by reference to the situation of the parties, the property and the acts of the parties." Kalman v. Bertacchi, 57 Ill.App.3d 542, 15 Ill.Dec. 204, 373 N.E.2d 550, 556 (1st Dist. 1978). This rule of Illinois law is well known. Judge Roszkowski of this court had occasion to apply and follow it in Evra Corp. v. Swiss Bank Corp., 522 F.Supp. 820 (N.D.Ill.1981), reversed on other grounds, 673 F.2d 951 (7th Cir. 1982). It is helpful for this case to analyze this recent decision.
In Evra Corp., plaintiff entered into a standard form time charter contract with the Pandora Shipping Company for lease of an ocean transport ship. The contract called for monthly payments "in advance" to an account with the Banque de Paris in Switzerland (Swiss Bank). The charter provided for the right of termination by Pandora if the payments were not timely made. As to the particular payment in question, the plaintiff initiated a wire transfer through Continental Bank of Chicago. Continental used the Swiss bank as its correspondent for most of these wire transfer transactions; it performed these services for Continental since the latter did not have direct access to bank operations in Switzerland. Continental in Chicago forwarded the request for transfer to its branch in London and then debited plaintiff's account. After the telex operator in London failed to reach Swiss Bank through its general telex number, Continental diverted the telex message to Swiss Bank's Foreign Exchange Department, a number used by Continental in the past. The facts amply showed that Swiss Bank received the message before the deadline for payment of the charter; however, the payment was never recorded and the transfer was not completed. Swiss Bank had no procedure in its Foreign Exchange Department for transferring telex messages destined for other departments. The court found that Swiss Bank failed to record the message due to either a loss of the message or a failure to keep paper in the machine (there was no automatic shutoff on the machine when the paper ran out). Due to Swiss Bank's negligence in not recording the message, the plaintiff lost its charter contract and suffered damages.
Judge Roszkowski concluded that Swiss Bank breached the duty of care that it owed Evra Corp. By analogy, he reasoned that since there was a contract between plaintiff and Continental, Continental owed plaintiff a duty of care, and Swiss Bank, as Continental's correspondent bank, owed plaintiff that same duty. Citing Delbrueck v. Manufacturers Hanover Trust Co., 609 F.2d 1047 (2d Cir. 1979), which analogized the conceptual use of the finality of checks once accepted to irrevocable wire transfers, he found a similarity between a "collecting bank" as defined in Art. IV of the U.C.C., Ill.Rev.Stat. ch. 26, § 4-105(d) (1979), and Swiss Bank's role as "corresponding bank." This U.C.C. provision states that a collecting bank is "any bank handling the item for collection except the payor bank," U.C.C. 4-105(d).
A corresponding bank is one which "regularly performs services for another in a place or market to which the other does not have direct access." Black's Law Dictionary (1979). Under U.C.C. 4-201(1), "[u]nless a contrary intent clearly appears ... the [collecting] bank is an agent or *327 subagent of the owner of the item." Thus, as Judge Roszkowski held in Evra, a correspondent bank in a wire transfer may be presumed to be an agent of the initiator of the transaction until such time as the transaction is completed. Swiss Bank was held to be the agent of Evra Corp. with the same duty of care owed to it by Continental.
In the present case, SFS (like Evra) is the initiator of the wire transfer. NEMB (like Continental Bank) is the custodial bank for funds disbursed by SFS. ANB, as the receiver of the wire transfer, is in the same position as Swiss Bank. In light of the holding in Evra, this court concludes that under the facts alleged, an agency relation existed between SFS and ANB. Accordingly, ANB owed SFS a duty of care which its actions in handling the transfer may have breached. Thus, the motion to dismiss Counts IV and VIII is denied.
The first three counts of SFS's complaint allege negligent conduct by ANB in failing to inform NEMB, Templeton, or SFS that the name and account number of the wire transfer did not coincide. ANB questions the existence of a duty owed by it to SFS. Both the plaintiff and the defendant consolidate these three counts into one general issue of negligence. The question, then, is the principle of law to be applied.
Under Illinois law, negligence must be proved by the existence of a duty owed to plaintiff by defendant, a breach of that duty, and an injury proximately resulting from that breach. The existence of such a duty is a question of law. Evra Corp., 522 F.Supp. at 828, citing Cunis v. Brennan, 56 Ill.2d 372, 308 N.E.2d 617 (1974). For a legal duty to exist, the occurrence must not be simply foreseeable but "reasonably foreseeable." Evra Corp., Id. at 959. The plaintiff in Evra contended that the defendant Swiss Bank owed plaintiff a duty to transmit the wire transfer accurately and timely. The court found that Swiss Bank owed a duty of care to Evra to maintain a system of receiving and disposing of telex messages upon which plaintiff could rely, and that Swiss Bank breached that duty. The court stated that the facts indicated "an appalling lack of regard on the part of Swiss Bank for the more than reasonably foreseeable possibility that the negligent maintenance of its foreign exchange telex machines could result in substantial damage to one of its customers." Id. at 829 (emphasis added). Thus, Evra, as one of Swiss Bank's "customers," could anticipate due care to be exercised by Swiss Bank in the handling of the wire transfer. In its opinion reversing the lower court, the Seventh Circuit held that this type of "general foreseeability" is insufficient to support an award of consequential damages. Evra Corp., 673 F.2d 951, at 959 (7th Cir. 1982). However, the circuit court noted that a different case was presented where, as here, direct damages are sought. Id. at 955.
In this case, SFS can likewise be deemed to be a "customer" of ANB. Section 4-104(e) of the U.C.C. defines a customer as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank." Through the agency relation discussed, ANB was acting essentially as a collecting bank for NEMB which in turn was the custodial agent of the funds disbursed by SFS. Furthermore, the official comment to U.C.C. 4-203, dealing with the effect of instructions given to a collecting bank by the transferor, states that the collecting bank is liable for failure to exercise good faith or ordinary care. Thus, reading the complaint in the light most favorable to SFS, it was a "customer" of ANB which owed it a duty to use due care in handling the wire transfer. Further, the loss of the transferred funds is the reasonably foreseeable result of a deposit made where the name on the transfer instructions differs from the name on the account into which the funds are deposited. Thus, plaintiff has stated a claim in negligence, therefore, the motion to dismiss Counts I-III is denied.
Count V alleges that ANB was the bailee of the funds transferred for delivery to the account of John Bushman, Trustee, and that ANB breached its duty as bailee by *328 misdelivering; that is, crediting the funds to the wrong account. The defendant contends that the wire transfer of the funds disbursed by SFS did not establish a bailment.
In a depositor-bank relation, there is a well established distinction between a general and a special deposit. In a general deposit situation, the bank merely becomes the debtor of the depositor to the extent of the deposit, and the title to the money passes to the bank. People ex rel. Russell v. Farmers State & Savings Bank of Grant Park, 338 Ill. 134, 170 N.E. 236 (1930). The deposit is a general one even when it is evidenced by a certificate of deposit. Mutual Acc. Ass'n of the Northwest v. Jacobs, 141 Ill. 261, 31 N.E. 414 (1892). A special deposit, however, is the delivery of either money or chattel to a bank under a special agreement or under circumstances sufficient to create a trust. Baiar v. O'Connell, 284 Ill.App. 331, 1 N.E.2d 805 (1936), aff'd, 365 Ill. 208, 6 N.E.2d 140 (1936). A special deposit is for a specific purpose, or for safekeeping, and the depositor is entitled to the identical thing or money deposited. This special deposit creates a bailment instead of a debtor-creditor relation, with the depositor's right to demand return of the exact chattel or specific money deposited. Mid-City National Bank of Chicago v. Mar Building Corporation, 33 Ill.App.3d 1083, 339 N.E.2d 497, 503 (1975).
In the case at bar, ANB received the wire transfer for deposit to an account, not for any special circumstance, safekeeping or subsequent return to the depositor intact. The wire transfer contemplated a credit to an account and not a safekeeping arrangement. No distinctive feature of a "special deposit" or "bailment" was present here. Thus, ANB's motion to dismiss Count V of the complaint must be granted.
Count VI in SFS' complaint alleges that ANB's failure to transfer the funds to the account of John Bushman, Trustee, or failure to return them to NEMB, constituted actionable conversion. ANB correctly denies the applicability of the conversion claim to this fact situation. One of the legal elements of a conversion, is not present here. The traditional action of trover does not operate on chattels generally, but specifically on property capable of identification as being the actual property or thing wrongfully taken and converted. Kerwin v. Balhatchett, 147 Ill.App. 561, 566 (1909). The question remains whether the wire transfer involved specific property.
In In re Oxford Marketing, United States v. Kallen, 444 F.Supp. 399 (N.D.Ill.1978), the court stated that a bank deposit is a chose in action or debt. It is an intangible right and not specific property owned by the depositor or the successor trustee. The court then cited Kerwin v. Balhatchett, 147 Ill.App. 561 (1909); Siegal v. Trac-Ler Karenola Radio & Television Corp., 333 Ill.App. 158, 76 N.E.2d 802 (1948) (abstract opinion); and Janes v. First Federal Savings and Loan Ass'n, 11 Ill.App.3d 631, 297 N.E.2d 255 (1973), aff'd in part, rev'd in part on other grounds, 57 Ill.2d 398, 312 N.E.2d 605 (1974). In the latter case, the court held that Illinois follows the common law rule which does not recognize an action for conversion of intangible rights. Thus, the wire transfer, like a bank deposit, can be considered intangible property. And since it is intangible, an action for conversion cannot be sustained. Furthermore, Burge v. Englwood, 213 Ill.App. 357, 363 (1919) stands for the principle that conversion cannot be maintained if the loss resulted from active or passive negligence or breach of contract. See Janes v. First Federal Savings and Loan Ass'n, 11 App.3d 631 at 260, 297 N.E.2d 255. Thus, the motion to dismiss Count VI is granted.
Count VII alleges that ANB entered into a contract with NEMB to deliver funds to the account of John Bushman, Trustee, in connection with redemption of Mr. Bushman's Templeton shares. SFS alleges it is a third party beneficiary and has the right to sue ANB for breach of that contract via the improper delivery for the funds. ANB counters that nothing in the complaint supports the legal conclusion that SFS was or could have been a third-party beneficiary in this situation.
*329 The general rule regarding a third party's right to sue for breach of a contract between two other parties was announced in Carson Pirie Scott & Co. v. Parrett, 346 Ill. 252, 178 N.E. 498 (1931). There, the Illinois Supreme Court stated that if a contract is made for the direct benefit of a third person not a party to the contract, that third person may sue for a breach thereof. The test to be applied is whether the benefit to the third person is direct to him or is only an incidental benefit. If the benefit is direct, then he may sue; if incidental, then there is no right of recovery. This test is to be determined within the language of the contract. Id. at 257-258, 178 N.E. 498. Accord, People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc., 78 Ill.2d 381, 36 Ill.Dec. 338, 400 N.E.2d 918 (1980). Furthermore, it is not necessary for the third party who is benefitted by the contract to be named therein if he is otherwise sufficiently described or designated. Candlewick Lake Utilities Co. v. Quinones, 82 Ill.App.3d 98, 37 Ill.Dec. 479, 402 N.E.2d 369 (1980); Gothberg v. Nemerovski, 58 Ill.App.2d 372, 208 N.E.2d 12 (1965). The question whether the benefit to a third party is direct or incidental depends on the intent of the parties, and must be determined case-by-case. Midwest Concrete Products Co. v. LaSalle National Bank, 94 Ill.App.3d 394, 49 Ill.Dec. 968, 418 N.E.2d 988, 990 (1981); Kravitz v. Lake County, 62 Ill.App.3d 101, 19 Ill.Dec. 611, 379 N.E.2d 126, 128 (1978).
Under the alleged facts, SFS has adequately pleaded its status as third-party beneficiary. The direct or substantial benefit to SFS is the interest in properly transferring the funds so as to avoid any loss by its customer or SFS itself. Also, SFS did not need to be named within the contract since it is evident that SFS falls within the group designated to benefit from the contract; i.e., Templeton, SFS, and John Bushman, Trustee. Thus, the motion to dismiss Count VII is denied.
SFS' Count IX alleges that ANB acted as though a depositor account in the name of John Bushman, Trustee, actually existed. This purportedly occurred because ANB failed to inquire or give notice to NEMB or SFS of the discrepancy between the name and account number. SFS' reliance on ANB's silence or inaction fostered a belief that an account for John Bushman, Trustee, actually existed, and thus prevented SFS from acting to avoid the loss of the funds. Thus, SFS alleges that ANB is estopped to deny the existence of a deposit contract between ANB and John Bushman. Plaintiff further alleges that by virtue of having reimbursed Bushman and Templeton through its reissuance of the redeemed shares, it has succeeded to their interests and can sue on the deposit contract. The problem with these allegations is that there is no contract between ANB and Bushman. It is undisputed that Bushman did not have an account at ANB and in fact had no relationship with ANB. Rather, Bushman was the beneficiary of a contract for deposit based on the wire transfer between ANB and NEMB. Thus, the contract which SFS seeks to estop ANB from denying does not exist and Count IX should be dismissed.
Accordingly, and for these reasons, the motion to dismiss is granted as to Counts IV, V and IX and denied as to the other counts.
So ordered.