Rhodes Pharmacal Company, Inc., a Corporation, Plaintiff-Appellant, v. Continental Can Company, Inc., a New York Corporation, Defendant-Appellee.

Gen. No. 50,825.

First District, First Division.

June 27, 1966.

Rehearing denied July 19, 1966.

Richard F. Watt, David R. Kentoff, John M. Bowlus and Stephen M. Slavin, of Chicago (Cotton, Watt, Rockler and Jones, of counsel), for appellant.

Paul M. Plunkett and Edward W. Nicewick, of Chicago (McMahon & Plunkett, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an alleged breach of implied warranty case. Plaintiff, Rhodes Pharmacal Company, Inc., is in the business of marketing various drug, cosmetic and hair beauty products. Plaintiff seeks to recover damages which resulted from leakage of aerosol cans purchased by plaintiff from defendant, Pittsburgh Railways Company, and manufactured by defendant, Continental Can Company, Inc. No personal injury is involved.

Plaintiff filed a 3-count amended complaint. Count II was directed against Continental Can, as manufacturer of the defective cans. The trial court granted the motion of Continental Can for judgment on the grounds that the complaint as against defendant Continental Can was substantially insufficient in law, in that it failed "to set forth any contractual relationship between the plaintiff

and this defendant," or "any legally recognizable basis or relationship between the plaintiff and this defendant, to support any warranties running from this defendant to the plaintiff." The trial court further found "there is no just reason for delaying enforcement or appeal of the order in accordance with Section 50(2) of the Civil Practice Act."

In substance, Count I of the amended complaint shows that plaintiff markets a hair waving and setting lotion, packaged and distributed under its trademark "Perform." In April 1960, plaintiff was informed by G. Barr, Inc., an Illinois corporation, whose assets were purchased by defendant Pittsburgh on April 9, 1962, that a gas propellant had been developed which would react compatibly with the setting solution of Perform. In June 1960, after laboratory tests had been performed, Barr informed plaintiff that these tests had revealed that the high water content of Perform caused unlined cans to rust and corrode, resulting in a discoloration and adulteration of the Perform solution.

Representatives of Barr informed plaintiff that the foregoing discoloration and adulteration could be eliminated and accordingly expressly warranted to plaintiff the following:

 (a) That the use of rustproof linings in the cans would prevent discoloration and adulteration of the Perform solution;

 (b) That such cans with rustproof linings were available;

 (c) That these linings had been tested by Barr for their compatibility with the Perform solution;

 (d) That such cans had been manufactured by defendant Continental;

 (e) That its laboratory tests had demonstrated conclusively that Perform could be satisfactori-

ly and merchantably packaged, stored and distributed in aerosol cans with rustproof linings;

(f) That the "shelf life" of Perform in the foregoing rustproof cans during which it would remain packed without leaking, exploding, evaporating was no less than three years.

In reliance upon the alleged express warranties, plaintiff instructed Barr to package and distribute Perform in rustproof lined cans to be manufactured and acquired from defendant Continental.

Plaintiff further alleges that in July 1960, representatives of plaintiff met with representatives of defendant Continental for the purpose of deciding upon the design and format of the advertising matter to be imprinted upon the aerosol can, and in October 1960, Barr began packaging and distributing Perform in aerosol cans for plaintiff for and in consideration of plaintiff paying Barr an agreed upon per unit price.

In May 1962, defendant Pittsburgh informed plaintiff that defendant Continental had changed the structure of the aerosol cans then being used by plaintiff to improve their appearance. This structural change consisted of modifying the seam running the length of the can, so that it was sealed on the inside of the can rather than on the outside, as it had been up to that time. Pittsburgh expressly warranted that the modified aerosol can would possess the identical characteristics and qualities of the cans previously used, on which no complaints had been received.

In July 1962, plaintiff began receiving complaints from its customers that the aerosol can was leaking, resulting not only in a loss of solution but also in damage to other products and inventory of drug stores and other retail outlets. Notice of these complaints was immediately communicated by plaintiff to defendant Pittsburgh, and Pittsburgh acknowledged "that the newly-modified aero-

sol cans were leaking and that the leakage was probably caused by the incompatibility of the new seam with the rustproof lining used in the cans, which incompatibility, in turn, caused corrosion, rusting and leaking of the container."

Plaintiff further alleges: "As a result of defendant Pittsburgh Railways Company's breaches of warranty, many of plaintiff's customers and other purchasers of Perform have stopped purchasing Perform in addition to other products distributed by plaintiff; plaintiff has been forced to refund substantial sums of money to its customers throughout the United States and to pay the costs involved in the return and destruction of large quantities of Perform; plaintiff's name and good will have suffered substantial and irremedial damage in addition to the loss of profits resulting from these breaches of warranty. Plaintiff has suffered damage in the amount of $400,000."

In Count II, which is directed against defendant Continental, plaintiff incorporates by reference the foregoing allegations, and further alleges that defendant Continental was the manufacturer of the aerosol cans and "knew the particular purpose to which plaintiff intended and did in fact put the aerosol cans and for which they were required," and plaintiff relied upon the skill and judgment of agents and representatives of defendant Continental in the design, engineering and utility of the aerosol cans used by it.

Plaintiff further alleges: "Defendant Continental warranted by implication that the aerosol cans manufactured by it and delivered to defendant Pittsburgh Railways Company would be reasonably fit, useful and merchantable by plaintiff. Defendant Continental further warranted by implication that the aerosol cans would pass without objection in the trade; that the cans would be fit for the ordinary purposes for which the cans would be used; that the cans would be adequately designed,

manufactured and sealed to meet the reasonable needs of the product in the trade, and that the cans would conform to the promises and affirmations of fact contained in the advertising matter on the cans to the extent that the cans would adequately contain the Perform solution for a reasonable period of time. . . . Defendant Continental has breached its implied warranties to plaintiff, as described in the immediately preceding paragraph, by virtue of the defective manufacture of the aerosol cans which resulted in the leakage and damage described in the immediately preceding paragraphs. As a result of the foregoing breaches of implied warranty, plaintiff has suffered damages in the amount of $400,-000."

Count III of the amended complaint, as amended, alleges breaches of implied warranties from Pittsburgh to plaintiff.

Plaintiff appeals on the theory "that there were direct contractual relationships between Plaintiff and Continental and that, consequently, the defense of lack of privity is not applicable. In any event, even if it be assumed that the necessary contractual connection is lacking, the facts disclose that Continental's implied warranties of fitness and merchantability were intended for Plaintiff's benefit. On this view, Plaintiff has a direct cause of action against Continental as the third-party beneficiary of the agreement for the sale of cans by Continental to Pittsburgh," and that "since the defense of lack of privity is everywhere on the wane, that outmoded defense should not bar Plaintiff's suit against Continental."

The theory of defendant Continental is that "this is a commercial transaction, governed by the law of contracts, the Sales Act and Uniform Commercial Code. Plaintiff's complaint fails to state a contractual relationship or any other legally recognizable relationship between plaintiff and defendant to support the implied warranties which plaintiff has alleged. It is also the theory

of the defendant that the doctrine of strict liability in tort has no application to the instant case, and privity of contract is necessary to plaintiff's cause."

 Initially, we note that defendant's motion for judgment for failure to state a cause of action admitted all facts well pleaded, and although the second amended complaint, as amended, is construed strictly against plaintiff, it is entitled to all reasonable inferences which can be drawn from the well pleaded facts. (West Towns Bus Co. v. Division 241 Amalgamated Ass'n of Street Elec. Ry. & Motor Coach Employees of America, AFL–CIO, 26 Ill App2d 398, 403, 168 NE2d 473 (1960).) However, defendant's motion does not admit plaintiff's interpretation of facts or exhibits embodied in the complaint (Lustgarten v. First Federal Savings & Loan Ass'n, 42 Ill App2d 86, 90, 191 NE2d 434 (1963)), nor does it admit conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. Washington v. Courtesy Motor Sales, Inc., 48 Ill App2d 380, 382, 199 NE2d 263 (1964).

As to the privity issue, plaintiff argues that "the defense of lack of privity is not applicable to this case." Reliance is placed on Suvada v. White Motor Co., 32 Ill 2d 612, 210 NE2d 182 (1965), and cases from other jurisdictions which adopt the so-called "strict tort liability" doctrine. Defendant urges that "the instant case cannot meet the requirements for the application of the doctrine of strict liability in tort." We agree. We are not persuaded that the doctrine of "strict tort liability" should be applied here. Therefore, we have decided to base our decision in the instant case on the third-party beneficiary theory, which plaintiff urges.

Plaintiff's authorities in support of its theory that it "has a direct cause of action against Continental as the third-party beneficiary of the agreement for the sale of cans by Continental to Pittsburgh," include 12 ILP, Contracts, § 265, pp 443, 444:

"The rule is well established in Illinois that where a person makes a promise to another, based on a valid consideration, for the benefit of a third person, such third person may enforce the contract, without proof of any consideration flowing from such third person. . . .

". . . It is not essential to the third person's right to enforce a contract made for his benefit that he be expressly named in the contract if he is otherwise sufficiently described or designated, and he may even be one of a class of persons if the class is sufficiently indicated.

". . . The promisee of a contract made for the benefit of a third person may sue for its breach and recover any damage caused to him by such breach."

■ ■ The third-party beneficiary rule in Illinois is stated in Carson, Pirie, Scott & Co. v. Parrett, 346 Ill 252, 257, 258, 178 NE 498 (1931):

"The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right of recovery thereon. . . .

". . . The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing can not be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability."

Plaintiff also argues that "under the Uniform Commercial Code, chap 26, Smith-Hurd Ann Stats (effective

369

July 1, 1962) Sections 2–314 and 2–315, the seller of goods impliedly warrants 'that the goods shall be merchantable,' which, among other things, means that they 'are fit for the ordinary purposes for which such goods are used. . . .' He also impliedly warrants, where he knows the particular purpose for which the goods are intended and that the buyer is relying upon his skill or judgment, that 'the goods shall be fit for such purpose.' Section 2–318 extends seller's warranties, whether express or implied, to members of the buyer's household and guests in his house, and sellers may not exclude or limit the operation of this extension. The Uniform Commercial Code Comment, Smith-Hurd Ann Stats chap 26, § 2–318, p 265, makes it clear that the extension to these specified third-party beneficiaries is not intended to exclude others, stating that 'the section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to other persons in the distributive chain.' "

Defendant, as to plaintiff's third-party beneficiary theory, argues that "there are no allegations in plaintiff's complaint as to the existence of any contract between defendant Continental and defendant Pittsburgh Railways Co. or that any such contract was breached. In order to enable a third person to enforce a contract to which he is not a party, it must appear that the contract was made for his benefit, or in other words, that there was a contractual intent to benefit the third person. . . . Lacking such allegations, plaintiff's amended complaint fails to state any cause of action as a third party beneficiary." Defendant also argues that "even if Plaintiff alleged the existence of a contract between the defendant Continental and defendant Pittsburgh, such contract would only incidentally benefit plaintiff."

We do not agree with these contentions of defendant. As argued by plaintiff, the third-party beneficiary rationale is playing an increasing and significant role in litigation regarding commercial transactions, even in the absence of privity of contract. (2 Williston on Contracts, § 356, pp 823–834, § 378A, p 967; Hardman v. Helene Curtis Industries, Inc., 48 Ill App2d 42, 60, 198 NE2d 681 (1964); 50 New Walden, Inc. v. Federal Ins. Co., 39 Misc2d 460, 241 NYS2d 128 (1963); Beck v. Spindler, 256 Minn 543, 99 NW2d 670 (1959).) Although the contractual negotiations in the instant case were completed before the effective date of the Illinois Uniform Commercial Code, we note that it provides that the seller of goods impliedly warrants that the goods shall be merchantable and fit for the ordinary purposes for which the goods are used, and also where the seller is aware of the specific purpose that the goods are fit for that purpose. See, also, section 15 of the old Sales Act (Ill Rev Stats, c 121½, § 15(1)).

In 17 Am Jur2d, § 302, p 721, it is said:

"Stated in general terms and apart from the specific limitations thereon, the present rule in nearly all American jurisdictions is that a third person may, in his own right and name, enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration. In other words, it is not necessary that any consideration move from the third party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party. This doctrine, originally an exception to the rule that no claim can be sued upon contractually unless it is a contract between the parties to the suit, has become so general and far-reaching in its consequences as to have ceased to be simply an exception, but is recognized as an af-

371

firmative rule, subject to certain limitations and exceptions. This rule has been embodied in the statutes of some jurisdictions."

Section 303, p 727:

"The basis of the rule permitting the beneficiary to sue, which is probably more frequently stated than any other at the present time, is that 'the law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded.' Also, it is sometimes said that the third person is permitted to sue in order to avoid circuity of action or a multiplicity of suits. In essence, the reason for the doctrine is no more nor less than that it is just and practical to permit the person for whose benefit the contract is made to enforce it against one whose duty it is to pay, and the doctrine has prevailed in the United States on the strength of its reasonableness and necessity, rather than upon any preconceived general theory of law."

Since the Uniform Commercial Code, effective in 1962, adopts the third-party beneficiary language in discussing the effect of express and implied warranties, it seems that this doctrine should be extended here to a situation where a seller makes a product for a user who is not a direct buyer, but with whom the seller has direct dealings. "Diligence was owing, not only to him who ordered, but to him also who relied." Glanzer v. Shepard, 233 NY 236, 135 NE 275, 277 (1922).

While plaintiff has not included in his complaint, as amended, the contract between Continental and Pittsburgh, this does not affect the validity of plaintiff's theory. As noted previously, plaintiff alleged that Continental "knew the particular purpose to which plaintiff intended and did in fact put the aerosol cans and for

which they were required," and that plaintiff "relied upon the skill and judgment of agents and representatives of . . . Continental in the design, engineering and utility of the aerosol cans used by it." We think these allegations, if proved, are sufficient to make plaintiff a beneficiary of any implied warranties extended to Pittsburgh by Continental. It was for plaintiff's use that the cans were manufactured, and it was for plaintiff's purpose, known to Continental, that the cans were impliedly warranted to be fit. In these circumstances, the reliance by plaintiff was more than incidental. See Acme Brick Co. v. Hamilton (Ark), 238 SW2d 658 (1951).

█ We hold, therefore, that the implied warranty of fitness imposed by law on a manufacturer may be enforced directly against the manufacturer by a third-party user, where, as alleged in the instant case, the manufacturer (1) was aware of the purpose for which the product was to be put, and (2) knew of the third-party user's reliance that the product would be fit for the purpose intended. Therefore, plaintiff here was not required to allege the terms of the contract between Pittsburgh and Continental in order to fully state plaintiff's alleged cause of action against Continental.

For the reasons given, the judgment entered in favor of defendant Continental and against plaintiff is reversed and the cause is remanded with directions to proceed in accordance with the views expressed herein.

Reversed and remanded with directions.

KLUCZYNSKI, P. J. and BURMAN, J., concur.