SLATE PRINTING COMPANY, Plaintiff
and Counterdefendant,

v.

METRO ENVELOPE COMPANY,
Defendant and Counterplaintiff.

METRO ENVELOPE COMPANY,
Cross Plaintiff,

v.

ALLIED PAPER, INC., Cross Defendant.

No. 81 C 3509.

United States District Court,
N. D. Illinois, E. D.

Jan. 8, 1982.

Joseph L. Goldberg, Chicago, Ill., for Slate Printing Co.

Christopher A. Hansen, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for Metro Envelope Co.

Harold C. Hirshman, John I. Grossbart, Sonnenschein, Carlin, Natht Rosenthal, Chicago, Ill., for Allied Paper, Inc.

## MEMORANDUM OPINION AND ORDER[1]

SHADUR, District Judge.

Slate Printing Company ("Slate") is plaintiff and counter-defendant in this action, and Metro Envelope Company ("Metro") is defendant and counter-plaintiff. Metro has filed a cross-complaint against Allied Paper, Inc. ("Allied"),[2] and Allied has now moved for its dismissal. Metro also seeks to impose on Slate the burden of alleged judicial admissions, with a consequent disposition of the entire litigation adversely to Slate. For the reasons stated in this memorandum opinion and order:

(1) Allied's motion to dismiss Metro's cross-claim is granted.

(2) Metro's motion for designation of judicial admissions and consequential relief is denied.

### Facts

Each of Slate, Allied and Metro provided either goods or services for Metro's ultimate sale of printed envelopes to Montgomery Ward & Co. ("Ward"). Ward had contracted with Metro and Slate for the manufacture of envelopes by Metro from paper printed by Slate. To fulfill its obligations Slate contracted for purchase of paper stock from Allied, which was unaware of Slate's other arrangements. Metro's cross-claim however asserts that "Allied knew that Slate intended to sell the paper to another party."

Slate is suing Metro for non-payment under the contract to provide Metro with the printed paper. Metro counterclaims for damages because it asserts the paper failed to meet specifications. Metro's cross-claim

---

1. This action (originally filed in the Circuit Court of Cook County) and a previously-filed but now-dismissed related case (filed in this Court) have had a checkered history. To minimize complexity in description, this opinion will ignore (so far as possible) all now-disposed-of facets of the litigation.

2. Slate and Allied have settled all matters in dispute between themselves.

asserts the same damages against Allied on the theories that (1) Metro was a third party beneficiary of the Slate-Allied contract (Count I), (2) Allied was negligent in manufacturing the paper (Count II) and (3) Allied breached the implied warranty of fitness for a particular purpose (Count III).

### Dismissal of Metro's Cross-Claim Against Allied

#### Count I

Metro's third-party-beneficiary claim rests on its allegation that when Allied contracted with Slate "Allied knew that Slate intended to sell the paper [presumably after processing it] to another party"—a party that turned out to be Metro. Because the paper allegedly did not conform to Slate's specifications, Allied would have breached its contracts with Slate. Metro claims standing to recover from Allied for that breach. Allied moves to dismiss Count I on the ground that Metro was *not* a third-party beneficiary of the Allied-Slate contract.

■ Under *Erie* principles state law provides the rule of decision in this diversity case. Black-letter principles as to third-party beneficiaries were stated by the Illinois Supreme Court in *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498, 501 (1931) and have been quoted over and over again for the past 50 years:

> . . . if a contract be entered into for a direct benefit of a third person not a party thereto, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct to him or is but an incidental benefit to him arising from the contract. If direct he may sue on the contract; if incidental he has no right to recovery thereon.

Application of the distinction between "direct" and "incidental" benefit is a function of the intent of the parties and must be made on a case-by-case basis. *Vinylast Corp. v. Gordon*, 10 Ill.App.3d 1043, 1049, 295 N.E.2d 523, 527 (1st Dist. 1973). More constructive than the direct-indirect dichotomy, which tends to be result-oriented rather than an analytical tool, is the recent reaffirmation in *Midwest Concrete Prod-*

*ucts Co. v. LaSalle National Bank*, 94 Ill. App.3d 394, 396, 49 Ill.Dec. 968, 418 N.E.2d 988, 990 (1st Dist. 1981):

> [I]nasmuch as people usually stipulate for themselves, and not for third persons, a strong presumption obtains in any given case that such was their intention, and that the implication to overcome that presumption must be so strong as to amount practically to an express declaration.  ·

■ Certainly there was no such *express* declaration in this case. Nor were the circumstances of the Allied-Slate agreement such as to overcome the "strong presumption." Illinois cases that have reached the opposite result typically involve fact situations like those in *Gothberg v. Nemerovski*, 58 Ill.App.2d 372, 385–86, 208 N.E.2d 12, 19–20 (1st Dist. 1965) (automobile liability insurance policy construed to make person injured by policyholder a third-party beneficiary); *Kravitz v. Lake County*, 62 Ill.App.3d 101, 104–05, 19 Ill.Dec. 611, 379 N.E.2d 126, 128–29 (2d Dist. 1978) (land purchasers held able to sue for violation of agreement between their vendor and county providing that no water connection fee would be charged); or *Mearida v. Murphy*, 87 Ill.App.3d 87, 90, 42 Ill.Dec. 650, 409 N.E.2d 145, 148 (4th Dist. 1980) (adjoining landowners had standing to enforce an easement provision in contract between their common grantor and another grantee). In all such cases contracting parties were obviously establishing jural relationships that deliberately went beyond their own to encompass third-party rights.

By contrast Metro can assert only that Allied knew, when it contracted with Slate, that someone would appear farther up the chain of supply—and that someone turned out to be Metro. That has never been enough under Illinois law to be viewed as "direct" rather than "indirect" benefit for third-party beneficiary purposes. It is no different in kind or degree from the typical owner-contractor-subcontractor situation, in which the Illinois courts consistently refuse to afford the owner third-party beneficiary rights against the subcontractor for claims like those Metro makes here. See the strik-

ingly parallel case of *Midwest Concrete Products Co.*, 94 Ill.App.3d at 397, 49 Ill. Dec. 970, 418 N.E.2d at 990.

Every commercial transaction between businesses in a supplier-manufacturer relationship involves the provision of supplies with express or understood specifications. Whenever those supplies are incorporated into an end product (with or without further processing), other businesses in the supply chain derive "benefit." But such benefit is classically viewed as "indirect"— as not vesting a directly enforceable right— absent some special expression by the original parties that they intended a different result. That was lacking here. Count I must be dismissed.

*Count II*

Metro's Count II asserts Allied's negligent manufacture of the offset paper provided to Slate. Metro claims no personal or property damages as flowing from Allied's alleged negligence, but rather seeks purely "economic" recovery—damages for additional business costs incurred and lost sales.

■ Illinois cases decided in the First Appellate District—where this Court sits— have consistently rejected such claims. See this Court's discussion in *National Can Co. v. Whittaker Corp.*, 505 F.Supp. 147, 149–50 (N.D.Ill.1981). And where there is a split between Illinois Appellate courts (here a single sport reflects a contrary conclusion, *Moorman Mfg. Co. v. National Tank Co.*, 92 Ill.App.3d 136, 47 Ill.Dec. 186, 414 N.E.2d 1302 (4th Dist. 1980)), this Court is bound— like its Illinois trial court counter-part—to travel the First Appellate route. *Instrumentalist Co. v. Marine Corps League*, 509 F.Supp. 323, 339 (N.D.Ill.1981), in part quoting *National Can*, 505 F.Supp. at 148 n.2.

■ That would dispose of the matter but for one post-*National Can* fact advanced by Metro: Leave to appeal has been granted by the Illinois Supreme Court in *Moorman.* Metro urges that this Court stay its hand until the Supreme Court has acted. But since *Moorman* the First Appellate District has continued to adhere to its uniform position: *Heat Exchangers, Inc. v. Aaron Friedman, Inc.*, 96 Ill.App.3d 376, 389, 51 Ill.Dec. 828, 421 N.E.2d 336, 345 (1st Dist. 1981). This Court's responsibility is to do the same. If it later develops that the Illinois Supreme Court agreed to review *Moorman* to affirm rather than reverse, Metro may then seek to reassert a claim against Allied.

*Count III*

■ Metro's Count III must fail as well. Here Metro sues under UCC § 2–315, Ill. Rev.Stat. ch. 26, § 2–315, which provides a right of action for buyers of goods whose sellers breach an implied warranty of fitness for a particular purpose. For such a claim to lie under Illinois law Metro must satisfy one of three alternatives:

(1) There must be privity of contract between Metro and Allied. *Suvada v. White Motor Co.*, 32 Ill.2d 612, 616–18, 210 N.E.2d 182, 184–85 (1965); *In re Johns-Manville Asbestos Cases*, 511 F.Supp. 1235, 1239 (N.D.Ill.1981).

(2) Metro must be in a position equivalent to that of a third-party beneficiary of the Allied-Slate contract. *Frank's Maintenance & Engineering, Inc. v. C. A. Roberts Co.*, 86 Ill.App.3d 980, 992–93, 42 Ill.Dec. 25, 408 N.E.2d 403, 412 (1st Dist. 1980); *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill.App.2d 362, 368, 219 N.E.2d 726, 730 (1st Dist. 1966).

(3) Metro must otherwise be able to sustain a tort action against Allied. *Berry v. G. D. Searle & Co.*, 56 Ill.2d 548, 558, 309 N.E.2d 550, 556 (1974).

■ There is of course no claim of privity here. This opinion's discussion as to Count I negates the third-party beneficiary possibility. And the analysis of Count II scotches the tort liability extension of Section 2–315. Accordingly Metro is out of court on its Count III claim too.

*Metro's "Judicial Admission" Motion* [3]

■ While Allied and Slate were still crossing swords, Slate filed two pleadings

---

**3.** Even though this action is in diversity, federal law must provide the rule for decision on Met-

ro's motion, both because of its relationship to procedure generally and because of its direct

that asserted the same defects in Allied's paper that Metro now claims against Slate:

> (1) an affirmative defense in the now-dismissed Allied suit against Slate in this Court, 80 C 6038; and
>
> (2) Slate's third-party complaint against Allied, filed in this action when it was pending in state court before removal to this Court.

Slate now denies any such defects, and Metro seeks to foreclose it from such denial.

Metro's argument is a simple one: Slate's statements in the prior pleadings are "judicial admissions" binding Slate as a matter of law. Because they would dispose of the only liability issue between Metro and Slate, the "judicial admissions" would be conclusive to award Metro judgment on the pleadings as to liability.

But that argument runs head on into our Court of Appeals' recent opinion in *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115 (7th Cir. 1981). *Enquip's* factual situation was substantively indistinguishable from ours: Smith-McDonald sued Gardner Construction Co. ("Gardner") in federal court. In its counterclaim against Smith-McDonald, Gardner claimed that oil separator tanks supplied by Enquip *did not* meet specifications. In Gardner's separate state court lawsuit against the Illinois State Toll Highway Authority and its architect-engineer, Gardner alleged that the tanks *did* meet the specifications. Smith-McDonald moved for summary judgment against Gardner in federal court, citing Gardner's pleading in the state court action. In reversing the District Court's grant of summary judgment, the Court of Appeals stated the applicable law (655 F.2d at 118, emphasis added):

> It is well established in this circuit and elsewhere that such matter from one proceeding is indeed admissible and cogniza-

ble as an admission in another. [citations omitted] Furthermore, the trial court properly ruled that while such evidence was admissible *it was not a judicial admission, and thus not binding or conclusive.* [citations omitted]

One of Slate's pleadings—its affirmative defense in 80 C 6038—was in a lawsuit other than this one, so that Enquip is on all fours.[4] As for the other—Slate's now-withdrawn third-party complaint against Allied in *this* action—*Enquip* confirms that the same principle applies (*id.*):

> Such an opportunity [to explain the purported admission to demonstrate that there is an issue of material fact] is particularly necessary in a complex third-party situation such as this one where claims pleaded in the alternative are sought to be used as admissions. *See Continental Insurance Co. v. Sherman*, 439 F.2d 1294, 1298 (5th Cir. 1971) (prejudicial error to allow a third-party cross claim to be used as an admission in the same suit).

In *Continental Insurance* the Court of Appeals for the Fifth Circuit held it prejudicial error to allow a third-party cross-claim to be used as an admission in the same suit (439 F.2d at 1298):

> Strictly applied, however, this rule would place a litigant at his peril in exercising the liberal pleading and joinder provisions of the Federal Rules of Civil Procedure in that inconsistent pleadings under Rule 8(e)(2) could be used, in the proper circumstances, as admissions negating each other and the allegations in third-party complaints and cross-claims seeking recovery over in the event of liability in the principal action could be used in that action as admissions establishing liability.

Rule 8(e)(2) is clearly implicated by the rule allowing an inconsistent pleading to be an

implication of Fed.R.Civ.P. ("Rule") 8(e)(2). *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

4. Metro's argument that the later consolidation of 80 C 6038 and this action makes all plead-

ings previously filed in the two cases pleadings in this case is a classic example of revisionist history. After all the concept of an admission necessarily depends on the facts existing *when the statement was made. Accord*, the Rubaiyat of Omar Khayyam, Stanza 71.

admission in the same case, at least in the context of three-party disputes. And there is no magic, as Metro would have it, in a party's having to label its inconsistent pleadings "alternative" or "hypothetical" to invoke the principle underlying the Rule.

■ *Enquip* establishes that when Slate, *in a separate action*, engaged in the inconsistent pleading presented here, such inconsistency has become admissible against Slate, but *not* as a "judicial admission," which is conclusive or binding. Continental Insurance would go even farther as to an inconsistent pleading in the *same action*, holding it entirely inadmissible, let alone a legally binding judicial admission. It is not now necessary to decide whether *Enquip*'s favorable citation of *Continental Insurance* imports an agreement with the latter's holding of total inadmissibility.[5] For present purposes it is enough to conclude that Metro's assertion of a "judicial admission" cannot prevail.

*Conclusion*

Allied's motion to dismiss Metro's cross-claim is granted under Rule 12(b)(6), for none of Metro's claims states a cause of action. Metro's argument on the "judicial admission" issue is equally misplaced, and its motion to dismiss Slate's Complaint and to strike Slate's answer to Metro's counterclaim is therefore denied.

---

**5.** Indeed it is questionable whether this Court will ever have to deal with that issue. Admission of the 80 C 6038 pleading pursuant to *Enquip* would place the Slate admission before the trier of fact in any event, for the statements in the two pleadings appear substantially identical.