## II. *Defendants' Motion to Amend the Court's Judgment.*

The defendants have also moved the Court to amend its judgment to include an award of defendants' attorneys fees and costs against the plaintiff. *See* 15 U.S.C. § 1117 (1976). Attorneys fees and costs are to be awarded in favor of a successful defendant only in exceptional cases in which the plaintiff's cause of action was groundless, unreasonable, vexatious, or was pursued in bad faith. *Sanford Research Co. v. Eberhard Faber Pen & Pencil Company,* 379 F.2d 512, 516–17 (7th Cir.1967); *Scott v. Mego International, Inc.,* 524 F.Supp. 74, 74–75 (D.Minn.1981). Because plaintiff had a legitimate difference of opinion on the issues relevant to this litigation, the Court finds that plaintiff's prosecution of this suit was not unreasonable, groundless, vexatious, or undertaken in bad faith. Therefore, defendants' request for an award of attorneys fees and costs is denied. *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 608 (3d Cir. 1978); *John R. Thompson Co. v. Holloway,* 366 F.2d 108, 116 (5th Cir.1966).

Accordingly,

IT IS HEREBY ORDERED that plaintiff's motions for reconsideration or, in the alternative, for a new trial are hereby DENIED.

IT IS FURTHER ORDERED that defendants' motion to amend the judgment is DENIED.

CHICAGO HEIGHTS VENTURE, a Limited Partnership; TMG Corporation, General Partner; Gerald D. Gillman, General Partner; Bernard Klebanow; Amy S. Cohen; Richard J. Scheuer; Donald E. Peiser; Leon Meyers; Claude N. Rosenberg, Jr.; Louise J. Rosenberg; and Martin Bernstein, and David Schulman, Limited Partners, Plaintiffs,

v.

DYNAMIT NOBEL OF AMERICA, INC. and Brown & Kerr, Inc., Defendants.

No. 82 C 5226.

United States District Court, N.D. Illinois, E.D.

Nov. 21, 1983.

216

Ronald A. Lev, Lev & Sneckenberg, Chicago, Ill., for plaintiffs.

Wilson & Newell, F.B. Libbe, Lawrence Bemis, Kirkland & Ellis, John Garafalo, Kiesler & Berman, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, Chicago Heights Venture, TMG Corp., Gerald Gillman, Bernard Klebanow, Amy S. Cohen, Richard J. Scheuer, Donald E. Peiser, Leon Meyers, Claude N. Rosenberg, Jr., Louise J. Rosenberg, Martin Bernstein and David Schulman, sued Dynamit Nobel of America, Inc. ("Dynamit") and Brown & Kerr, Inc. ("Brown & Kerr") to recover for damages sustained by their buildings as a result of an allegedly defective roof supplied to Brown & Kerr by Dynamit. Presently before the Court is Dynamit's motion to dismiss.[1] For reasons set forth below, Dynamit's motion is granted in part and denied in part.[2]

---

**1.** Brown & Kerr have moved pursuant to Fed.R. Civ.P. 12(b)(1) to dismiss this case for lack of subject matter jurisdiction, claiming that its citizenship is not diverse from that of Chicago Heights Venture, and that Chicago Heights Venture, a partnership, may not bring suit on its firm name alone against Brown & Kerr. In *Roller Derby Associates v. Seltzer*, 54 F.R.D. 556, the Court held that under Illinois law, actions by partnerships must be brought in the name of the partners, and not in the firm name. *Id.* at 557. We therefore strike Chicago Heights Venture as a plaintiff; all partners are presently named plaintiffs, thus rendering dismissal of this action unnecessary. Since all named plaintiffs are citizens of states diverse to the citizenry of Brown & Kerr and Dynamit, and since we have dismissed Chicago Heights Venture as a plaintiff, Brown & Kerr's additional argument is meritless. Accordingly, its motion is denied. It is so ordered.

**2.** Dynamit previously filed a motion for judgment on the pleadings with respect to the complaint, to which plaintiffs have responded. While we have considered the arguments raised

Plaintiffs own an apartment complex in Chicago Heights, Illinois. During 1974 and 1975, Dynamit supplied Trocal, a roofing material, to Brown & Kerr; Brown & Kerr installed the Trocal to the roof of plaintiffs' apartment complex. In 1978 and 1979, the Trocal tore away from the roof of the apartments, permitting water leakage into the building. Plaintiffs' amended complaint asserts a variety of causes of action: Count I sounds in strict products liability, Count II claims that defendants were negligent, Count III seeks punitive damages, Count IV asserts an express warranty, Count V asserts an implied warranty of merchantability, Count VI sounds in common law fraud, while Counts VII and VIII sue for breach of contract and breach of an implied warranty of fitness for a particular purpose.

 In deciding a motion to dismiss, the complaint and any inferences which may be drawn therefrom are to be viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The facts presented in the complaint must be taken as true. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir.1981). The complaint should be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78· S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

### Count I

 In an effort to support dismissal of Count I, Dynamit argues that the Trocal roof is not a "product" for purposes of the

doctrine of products liability. Plaintiffs responded that the reusable nature of the Trocal roof, as well as policy considerations, support treating the roof as a product. In determining whether a particular item is a product, the various policy reasons underlying strict products liability must be considered, rather than simply examining the dictionary definition of the term "product." *Lowrie v. City of Evanston,* 50 Ill.App.3d 376, 383, 8 Ill.Dec. 537, 542, 365 N.E.2d 923, 928 (1st Dist.1977). Many of the policy considerations embodied by strict liability focus upon the protection of consumers, with their unequal bargaining power and lack of access to information, from accidental injuries.[3] In examining these policy considerations, the *Lowrie* court concluded that a multilevel open air parking garage was not a product. *Id.* And, the court in *Immergluck v. Ridgeview House, Inc.,* 53 Ill.App.3d 472, 11 Ill. Dec. 252, 368 N.E.2d 803 (1st Dist.1977), reached the identical conclusion with respect to a sheltered care medical facility, noting that the Illinois Supreme Court has not defined a product for purposes of strict liability. *See also, Heller v. Cadral Corp.,* 84 Ill.App.3d 677, 40 Ill.Dec. 387, 406 N.E.2d 88 (1st Dist.1980) (a condominium unit is not a product). More recently, the Appellate Court of Illinois concluded that a fabricated guardrail, insofar as it was a component and indivisible part of the entire building structure, was not a product. *Walker v. Shell Chemical, Inc.,* 101 Ill. App.3d 880, 883, 57 Ill.Dec. 263, 266, 428 N.E.2d 943, 946 (1st Dist.1981).

by both parties in these pleadings, the subsequent filing of an amended complaint and Dynamit's motion to dismiss renders unnecessary a ruling upon its earlier motion.

3. Comment c to the Restatement (Second) of Torts § 402A (1965) sets forth some of the policy reasons for the doctrine of strict products liability:

the justification for the strict liability has been said to be that the seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has

the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

■ In the instant case, Illinois law requires the conclusion that the Trocal roof is an integral part of the building structure and not a product for purposes of products liability. The roof is "a component and indivisible part of the entire building structure" under the rule expressed in *Walker*. Policy considerations embodied by strict liability, moreover, do not support defining the Trocal roof as a product; plaintiffs are a commercial enterprise, in the business of managing apartments. Additionally, the existence of other judicial remedies such as breach of warranty further supports our conclusion that roofing material is not a product within the ambit of the products liability doctrine. *See Lowrie v. City of Evanston*, 50 Ill.App.3d 376, 384, 8 Ill.Dec. 537, 543, 365 N.E.2d 923, 929 (1st Dist. 1977). Accordingly, Count I of the amended complaint is dismissed.

### Count II

■ Count II sounds in negligence and seeks $300,000 in damages to their property and business when the Trocal roof tore away from the roof of the apartments. Dynamit cites a recent Illinois Supreme Court case for the proposition that actions in strict liability or negligence for economic loss will not lie. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). The Court reaffirmed this holding in *Redarowicz v. Ohlendorf*, 92 Ill.2d 171, 65 Ill.Dec. 411, 441 N.E.2d 324 (1982). *Moorman* defined economic loss as

'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— without any claim of personal injury or damage to other property * * *' (Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966) as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' (Comment, *Manu-*

*facturers' Liability to Remote Purchases for "Economic Loss" Damages—Tort or Contract?*, 114 U.Pa.L.Rev. 539, 541 (1966).

91 Ill.2d 69, 82, 61 Ill.Dec. 746, 752, 435 N.E.2d 443, 449. Thus, in *Redarowicz*, the Court affirmed the dismissal of counts based upon a negligence theory seeking recovery for cost of a defectively constructed chimney, wall and patio and observed that recovery in negligence is premised upon a showing of harm beyond disappointed expectations. 92 Ill.2d 171, 177, 65 Ill. Dec. 411, 414, 441 N.E.2d 324, 327. It is important to emphasize, however, that physical injury to property remains actionable in tort. *Moorman*, 91 Ill.2d 69, 81, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450.

Plaintiffs assert that Count II does not involve economic loss, but rather claim that it seeks recovery for property damage, and that dismissal at this stage of the litigation would be premature. We do not agree. Plaintiffs' amended complaint avers that portions of the Trocal roof tore away from its underlying surface, allowing water to leak and thus damaging the building. Some pieces of the Trocal roof also blew off during a windstorm. In deeming damages to a chimney wall and patio economic loss, the Court in *Redarowicz* stated that:

[t]his is not a case where defective construction created a hazard that resulted in a member of the plaintiff's family being struck by a falling brick from the chimney. The adjoining wall has not collapsed on and destroyed the plaintiff's living room furniture.

92 Ill.2d 171, 178, 65 Ill.Dec. 411, 414, 441 N.E.2d 324, 327. Such damages, in contrast to those alleged, would sound in tort. In the instant case, plaintiffs' damages did not result from "a sudden or dangerous occurrence," but rather, occurred "due to deterioration, internal breakdown, or nonaccidental cause." *Moorman*, 91 Ill.2d 69, 86, 61 Ill.Dec. 746, 753, 435 N.E.2d 443, 450. Plaintiffs' remedy therefore lies in contract, and Count II is dismissed.[4]

---

**4.** The conclusion that economic losses are not recoverable in tort provides additional justification for dismissal of Count I, in which plaintiffs seek recovery for such losses under a theory of

## Counts IV and V

Counts IV and V assert that defendants breached an express warranty and an implied warranty of merchantability,[5] respectively. In support of its motion to dismiss, Dynamit claims that privity of contract between it and plaintiffs is absent, as required by Ill.Rev.Stat. ch. 26 § 2–318:

> [a] seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this Section.

Plaintiffs contend that both counts fall within the third party beneficiary exception to the privity requirement.

■ Generally, warranties are not applicable between a buyer and a remote manufacturer; however, where there is a direct relationship between the manufacturer and the seller, or where the manufacturer knew the identity, purpose and requirements of the dealer's customer and delivered the goods specifically to meet those requirements, a warranty suit between a buyer and such a manufacturer will lie. *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App.3d 980, 992–93, 42 Ill.Dec. 25, 34, 408 N.E.2d 403, 412 (1st Dist.1980). Additionally, a third party may sue for breach of contract if he or she entered into the contract for his or her direct benefit. *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498, 501 (1931). But, merely alleging that the remote seller knows that a dealer will resell the seller's product will

not support a third party beneficiary claim. *Slate Printing Co. v. Metro Envelope Co.*, 532 F.Supp. 431, 433 (N.D.Ill.1982).

■ In the instant case, plaintiffs have alleged that Dynamit knew plaintiffs were the intended beneficiaries of Brown & Kerr's contract with Dynamit, and that the Trocal was for plaintiffs' use and benefit. Their allegations, if proven, are sufficient to make them third party beneficiaries of any warranties extended to Brown & Kerr by Dynamit. *Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill.App.2d 362, 372–73, 219 N.E.2d 726, 732 (1st Dist.1966). Therefore, at this stage of the proceedings, dismissal of Counts IV and V on these grounds must be denied.

## Counts V and VII

As an additional basis for dismissing Count V, the implied warranty of merchantability count, as well as Count VII, which asserts the breach of an implied warranty of fitness for a particular purpose[6] arising out of a contract between an agent of Dynamit and Brown & Kerr, Dynamit points to the statute of limitations contained in Ill.Rev.Stat. ch. 26 § 2–725:

> (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and

---

strict liability. *Moorman*, 91 Ill.2d 69, 81, 61 Ill.Dec. 746, 751, 435 N.E.2d 443, 448.

5. Ill.Rev.Stat. ch. 26 § 2–314 provides, in relevant part, that

> [u]nless excluded or modified (Section 2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

6. According to Ill.Rev.Stat. ch. 26 § 2–315,

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

In response, plaintiffs assert that express warranties by Dynamit that its product is guaranteed watertight for five years serve to extend the implied warranties asserted in Counts V and VII pursuant to § 2–725(2).

Section 2–725 bars warranty or breach of contract actions brought more than four years after tender of delivery unless a warranty explicitly extends to future performance. *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 94, 61 Ill.Dec. 746, 757, 435 N.E.2d 443, 454 (1982). "Explicit" under § 2–725(2) means "[n]ot implied or conveyed by implication; distinctly stated; plain in language; clear; not ambiguous; express; unequivocal." *Id.* at 93–94, 61 Ill.Dec. at 757, 435 N.E.2d at 454, citing *Binkley Co. v. Teledyne Mid-America Corp.*, 333 F.Supp. 1183, 1186 (E.D.Mo.1971), *aff'd*, 460 F.2d 276 (8th Cir. 1972). Moreover, a party's expectation that a warranty extends for the life of a product will not delay the point at which the statute of limitations begins to run. *Id. Moorman*, 91 Ill.2d at 94, 61 Ill.Dec. at 757, 435 N.E.2d at 454. There is no evidence that Dynamit ever explicitly extended the implied warranties of fitness and merchantability to future performance, notwithstanding any "expectations" which the five-year express warranty may have created in plaintiffs. Dynamit supplied the Trocal to Brown & Kerr, who installed it, in 1974 or 1975. The statute of limitations began to run at that time, and for that reason, Counts V and VII of this action, which was filed in 1982, is barred.

Finally, Count VI sets forth a series of representations made by Dynamit to plaintiffs concerning the design, manufacture and installation of the Trocal roof, which plaintiffs assert were false. Fed.R. Civ.P. 9(b) requires that

> [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.

Dynamit asserts that plaintiffs' claims for fraud fail to comply with Rule 9(b). Rule 9(b) requires that a complaint allege facts concerning the time periods, the nature of the alleged misrepresentation and the individuals involved. *Russo v. Bache Halsey Stuart Shields*, 554 F.Supp. 613, 621 (N.D. Ill.1982). Plaintiffs have set forth in detail the contents of the alleged fraudulent misrepresentations. The time frame of the misrepresentations, while less definite, sufficiently apprises Dynamit for purposes of the present stage of the litigation. However, neither the particular individuals involved, nor the location of the misrepresentations have been identified. Additionally, plaintiffs assert that the false representations were included in advertising, yet they do not identify the medium through which the misrepresentations reached them. Thus, the complaint fails to plead fraud with sufficient particularity under Rule 9(b), and Count VI is therefore dismissed.[7]

---

Accordingly, Dynamit's motion is granted in part and denied in part. Counts I, II, III, V, VI and VII of the amended complaint are dismissed. Dynamit's motion to dismiss Count IV of the amended complaint is denied.[8] It is so ordered.

---

**7.** Because we have dismissed Counts I, II and VI, Count III must also be dismissed, since it seeks punitive damages for activities arising out of claims set forth in Counts I, II and VI.

**8.** Because the issues have been narrowed by this ruling, it may be appropriate at this time for the parties to discuss settlement. It is ordered that the attorneys meet with a view toward negotiating a settlement on or before January 1, 1984. At the status hearing set for January 13, 1984, for the filing of the pretrial order, the parties are to report to the Court as to the result of these settlement discussions.